UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,

    Plaintiff,

                                                    Case No.:

v.

AMERICAN AIRLINES, INC.,
AMERICAN AIRLINES, INC. PILOT RETIREMENT BENEFIT PROGRAM &
PENSION BENEFITS ADMINISTRATION COMMITTEE,
as fiduciary of the PROGRAM,

    Defendants.
_____/

## COMPLAINT FOR DISABILITY BENEFITS

    Plaintiff sues Defendants and says:

### I. JURISDICTION AND VENUE

    1. Plaintiff's claims are filed pursuant to 29 U.S.C. § 1001, *et seq*. (ERISA). Venue and jurisdiction are, therefore, proper pursuant to 29 U.S.C. § 1132.

### II. PARTIES

    2. Plaintiff's employment in connection with the subject disability plan was based out of Miami, Florida. Defendant American Airlines, Inc. (hereinafter "AA") is a foreign corporation doing business in Florida. AA is the plan administrator for the long-term disability program at issue in this case. Defendant American Airlines, Inc. Pilot Benefit Program ("Program") is an ERISA benefit plan providing, inter alia, long-term disability benefits. Defendant Pension Benefits Administration Committee is a fiduciary of the Program. AA delegates administration of claim appeals to the Pension Benefits Administration Committee.

### III.  FACTS

3.  At all times material to this action there was in full force and effect an ERISA plan providing, inter alia, long term income disability benefits, the Pilot Retirement Benefit Program (the "Program").

4.  The purpose of the Program was to provide Mr. Meadows a percentage of his Average Monthly Compensation in the event that he became disabled as defined by the plan.

5.  Mr. Meadows was an Airline Pilot (Active Pilot Employee as defined by the Program) for AA and was an eligible plan participant of Program at all times material to this action.

6.  In May of 2003, Mr. Meadows ceased work due to depression, anxiety and sleeplessness, for which he was prescribed anti-anxiety medication by his family physician.

7. Such mental health conditions prevent Mr. Meadows from performing his occupation as an Airline Pilot and he is disabled under the terms of the Program.

8. Mr. Meadows applied for disability benefits through the Program on April 6, 2004 and was approved on July 2, 2004 based on the conditions of depression and anxiety.  Specifically Thomas Bettes, M.D., AA's Manager of Occupational Health Services and/or AA's Corporate Medical Director documented that Mr. Meadows was medically qualified for the disability pension program based on his condition of Depression Requiring Pharmacological Treatment, that the Plaintiff's disability was not based on a fear of flying, that his disability will prevent him from operating as a cockpit

crew member, i.e. a Pilot or Flight Engineer employee, and that there has been continued qualified medical care consistent with the nature of the Plaintiff's illness.

9. Since then, Mr. Meadows' mental health condition deteriorated and he began psychotherapy on a regular basis in August of 2004.

10. Mr. Meadows prescribed medications include Wellbutrin (450 mg/day), Lamictal (200 mg/day), a mood stabilizer, and Lexapro (10mg/day).

11. Lawrence Meadows has not piloted an airplane since April 2003.

12. The FAA has refused to issue Mr. Meadows the medical certification necessary to exercise airman privileges because of the prescription medications he takes.

13. Neither of Lawrence Meadows' conditions of depression or anxiety involve or stem from a fear of flying in any way.

14. The Program approved paid Mr. Meadows' benefits for approximately three and one-half years.

15. However, on December 26, 2007, AA communicated termination of such benefits due to alleged lack of verification of continued disability and treatment necessity. Such December 26, 2007 letter was addressed incorrectly and Mr. Meadows first learned about such termination on January 21, 2008 when he received a letter from the Pension Plan Administration that reflected that American Airlines, Medical and Occupational Health Services had notified it that the Plaintiff's benefits had been terminated. Mr. Meadows did not receive the actual termination letter until sometime after January 28, 2008 when he requested the same.

16. Despite Mr. Meadows' delay in receiving the termination letter, he timely appealed the benefit determination.

17.  In support of his appeal, Mr. Meadows submitted multiple psychiatric evaluations, one by long time treater Robin Browdy Ross, M.S., A.P.R.N. on February 11, 2008 and one by Joe Culbertson, M.D. on March 27, 2008 that collectively provided diagnoses of Major Depression and Bipolar Disorder, and each concluded that without psychiatric medications and counseling, the Plaintiff would relapse.

18. Also in support of his appeal, Mr. Meadows submitted a statement from W. Keith Martin, M.D. of Virtual Flight Surgeons who confirmed that the Plaintiff is unable to exercise the privileges of an Airman's Medical Certificate based on his diagnosis and treatment, and that he would expect his disqualification to be long term.

19. On May 27, 2008, at the request of AA, Western Medical Evaluators, Inc. ("WME") performed a medical/"peer review" of Mr. Meadows' disability claim that concluded that based on an alleged lack of objective testing, the Plaintiff's "diagnosis and impairments were unclear" and hence "his prognosis is unclear."[1]  The initial reviewer, Dr. Mark Moeller, discussed his findings with Dr. Karen Grant at WME who similarly found, as communicated in a June 5, 2008 letter, that Mr. Meadows had not been properly evaluated and that he should seek such testing and evaluation by a specialist before concluding he was disabled as a pilot for life.

20.  On June 10, 2008, based on WME findings and without attempting to seek clarification of the issues and questions raised by such findings, the Defendants finally denied Mr. Meadows' disability claim.

21. The Defendants had a duty under ERISA to conduct a full and fair review of Mr. Meadows' claim and to seek out information regarding any matters that would reasonably require investigation before making a final determination.   Brown v. Blue

---

[1] See Dr. Mark Moeller's May 27, 2008 report to American Airlines, Inc.

4

Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1566 n. 11 (11th Cir. 1990), Shannon v. Jack Eckerd Corp., 113 F.3d 208, 212 (11th Cir.1997), Brock v. Walton, 794 F.2d 586 (11th Cir. 1986).

22. The failure to seek a full and fair review and fully investigate a claim results in an arbitrary and capricious claim determination.  Brown, 898 F.2d at 1566 n. 11, Shannon, 113 F.3d at 212.

23.  Mr. Meadows is prevented by an illness verified through a medical authority that prevents him from continuing to act as an Airline Pilot.  Lawrence Meadows is disabled as defined by the Program.

24.  In accordance with the procedures established by the plan, Mr. Meadows notified the Defendants that he was disabled under the terms of the Program and his treating physicians have consistently communicated to the Defendants that Mr. Meadows is disabled as defined by the Program.

25.  The decision to terminate Mr. Meadows' benefits was improper and was tainted by Defendants' financial conflict of interest.

26.  The denial of Mr. Meadows' claim and was a breach of the terms of the plan under which the Plaintiff was covered and a breach of the Defendants' fiduciary responsibilities to the Plaintiff.

### IV. COUNT I: PLAN BENEFITS

Plaintiff incorporates the allegations contained in Paragraphs 1 through 26 as if fully stated herein and says further that:

27. Plaintiff is entitled to certain benefits of the plan consisting of past disability benefits including prejudgment interest, retroactive to the day benefits were terminated pursuant to 29 U.S.C. §1132(a)(1)(B).

28. Plaintiff is entitled to the benefits identified herein because:

   a. the benefits are permitted benefits under the plan;

   b. Plaintiff has satisfied all conditions to be eligible to receive the benefits;

   c. Plaintiff has not waived or otherwise relinquished his entitlements to the benefits.

29. The Defendants have refused to pay the benefits sought by Mr. Meadows ignoring the medical records and clear opinions of the physicians that have personally treated him.

30. The Defendants failed to conduct a full and fair review of Mr. Meadows' claim thereby resulting in an arbitrary and capricious claim determination.

31. In addition, or in the alternative, procedural errors and irregularities in the processing of Mr. Meadows' claim, including but not limited to Defendants' failure to follow ERISA's claim regulations, rendered the Defendants' termination of Mr. Meadows' disability benefits arbitrary and capricious.

## V.  COUNT II – OTHER EQUITABLE RELIEF

Plaintiff incorporates the allegations contained in Paragraphs 1 through 31 as if fully stated herein and says further that:

32. To the extent that the Defendants violated any provisions of Subchapter I of Title 29, Chapter 18 of the United States Code, the Plaintiff is entitled to appropriate

equitable relief pursuant to 29 U.S.C. §1132(a)(3), including but not limited to Plaintiff's out-of-pocket costs to obtain insurance coverage that was ancillary to the Program and that was discontinued based on his denial of disability benefits, such as retiree medical benefits, and any other appropriate injunctive and declaratory relief.

## VI. COUNT III: ATTORNEY'S FEES

Plaintiff incorporates the allegations contained in Paragraphs 1 through 32 as if fully stated herein and says further that:

33. To the extent that the Defendants violated any provisions of Subchapter I of Title 29, Chapter 18 of the United States Code, the Plaintiff is entitled to reasonable attorney's fees and costs of this action pursuant to 29 U.S.C. §1132(g)(1).

## VII. RELIEF REQUESTED

Plaintiff incorporates the allegations contained in Paragraph 1 through 33 as if fully stated herein and says further that:

34. As a result of the acts and/or omissions of the Defendants as alleged herein, the Defendants owe Lawrence Meadows unpaid disability benefits, plus interest and/or Mr. Meadows is entitled to appropriate equitable relief such as out-of-pocket medical coverage costs as a result of the acts and/or omissions of the Defendants.

35. The Defendants are also liable for Mr. Meadows' attorney's fees and the costs of litigation in an amount to be proven at trial.

36. Defendants are also liable to place Mr. Meadows in the position he would have enjoyed under the plan had he not been wrongfully denied benefits by the Defendants.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lawrence Meadows, prays for a judgment against the Defendants for the relief as plead herein and for such other equitable relief as this Honorable Court deems just and proper.

*Respectfully submitted,*

THE LAW OFFICE OF CARRIE J. FEIT, P.A
3211 Ponce de Leon. Blvd., Ste. 200
Coral Gables, FL 33134
p: 305.443-3060
f: 305.443-2238

BY: /s/ Carrie Feit
    CARRIE J. FEIT
    FL. Bar No. 470066