UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.:  10-22175-Civ-Altonaga/Brown

FILED by _____ D.C.

MAR 19 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D of FLA. – MIAMI

LAWRENCE MEADOWS,

     Plaintiff,

v.

AMERICAN AIRLINES, INC.,
AMERICAN AIRLINES, INC. PILOT
RETIREMENT BENEFIT PROGRAM &
PENSION BENEFITS ADMINISTRATION
COMMITTEE,
as fiduciary of the Program.

     Defendants.

_____/

## PLAINTIFFS MOTION AND MEMORANDUM FOR  RULE 60(b) RELIEF TO SET ASIDE ORDER AND FINAL SUMMARY JUDGEMENT BASED ON NEWFOUND EVIDENCE, FRAUD AND MISREPRESENTATION; OR ALTERNATIVELY USING THE COURTS INHERENT POWERS UNDER RULE 60(d)

Verified Motion
1

## TABLE OF CONTENTS

MOTION............................................................................................................... 3

MEMORDANDDUM

INTRODUCTION...............................................................................................3

Fla. S.D. LOCAL RULE 7.1(3)(A) MEET AND CONFER CERTIFICATION................... 4

SUMMARY OF FACTS:  Procedurally Flawed & Fraudulent Claims Reviewer WME
and Plan Administrator's Use of  Fraudulent "Independent" Doctors Reports................... 5

ARGUMENT

A.   Defendant's Unethical Conduct Not Discrete Act but a Serial Violation of the Rules......... 10

B.   Plan Administrator Breached its Fiduciary Duty  Used a Procedurally Flawed
and Fraudulent Independent Disability Claims Reviewer...................................... 12

C.   "Smoking Gun" - Newly Discovered Evidence  Showing WME's "Independent"
Medical Doctors Reports  Used to Deny Plaintiff's Disability Benefits Were Fraudulent... 15

D.   The Defendant Mislead and Knowingly Allowed the Court  to Detrimentally Rely
Upon on WME's  Fraudulent "Independent " Doctors Reports............................................. 17

E.   Enforcement of Rule 60(b) and  60(d) Are Warranted Given Defendant's
Misrepresentations, Misconduct, Fraud, and Failure of Its Duty For Candor Toward
the Tribunal....................................................................................................... 18

CONCLUSION..................................................................................................21

VERIFICATION................................................................................................ 23

NOTICE OF REQUEST FOR HEARING.................................................................. 24

CERFTIFICATE OF SERVICE............................................................................. 25

EXHIBITS 1 - 20

## **MOTION**

I, Lawrence M. Meadows, plaintiff, in the above styled cause, hereby file this motion under the Fed. R. Civ. P., RULE 60. RELIEF FROM A JUDGEMENT OR ORDER; based on ¶ *(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, (2) "newly discovered evidence*," and *(3) "fraud, misrepresentation, or misconduct by an opposing party"*, or *(6) "any other reason that justifies relief."* Further, this motion is filed timely under ¶ *(c) Timing and Effect of Motion, (1) Timing.* A *motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding;* as it is less than one year from when the final mandate was issued on Aug 2, 2013. Alternatively, I request this Court exercise its inherent powers under Rule 60(d): *OTHER POWERS TO GRANT RELIEF,* ¶ (3) to "*set aside a judgment for fraud on the court."*

## **INTRODUCTION**

The Plaintiff is particularly disturbed by his discovery of newfound incontrovertible evidence showing that the purportedly "independent" medical doctors disability claim review reports submitted to this Court by the Defendant in support of its motion for summary judgment, have proven to be anything but. In fact, these "independent" medical doctors reports used to deny Plaintiff's disability benefits, were instead outright fraudulent fabrications and forgeries performed by a procedurally flawed, fraudulent third party claims reviewer, Western Medical Evaluators, Inc (hereinafter "WME"). The Defendant's in house plan administrator the Pension Benefits Administration Committee (herein after "PBAC") violated the Summary Plan Document, failed its due diligence, and breached its fiduciary duty when it hired WME, and directed them to write the "independent" Doctors reviews [AR/Meadows 000154-153] for disabled pilots claims. Unfortunately, the Defendant and its Counsel mislead this Court, and

allowed it to detrimentally rely upon those reports when rendering its Opinion and Final Summary Judgment on Mar. 24, 2011. Despite being put on notice that such reports were suspected to be fraudulent. Now the Plaintiff has "smoking-gun" proof that his reports were indeed fraudulent. As a result, the Plaintiff has suffered a gross manifest injustice.

While not an attorney, the Plaintiff himself was a former U.S Air Force Officer, who served as a military pilot during Gulf War I, until he was honorably discharged, and began his career as a professional airline pilot at American Airlines. As such, he has been held to the highest standards of honorable, professional, and ethical conduct . As such, he would in turn expect no less from Defendant's counsel, both as Officers of Court and as required under the Florida Rules of Professional Conduct. Therefore, the Plaintiff as a matter of professional courtesy made multiple written request to Defendant's counsel to meet and confer on his newfound evidence of fraudulent submissions to this Court. However, said requests were arrogantly rebuffed by the Defendant's local counsel, Terrence Conner and Jennifer Ellis, of Hunton & Williams, LLP., who refused to contact Plaintiff on this matter.

Therefore, Plaintiff has been left with no choice, but to seek justice through filing this Rule 60(b) Motion. Defendant's Counsel's penchant for continued unethical conduct shocks the Plaintiffs sensibilities. He hopes this Court is equally shocked, and takes appropriate action to remedy the gross manifest injustice, which the Plaintiff has suffered at their unclean hands.

### Fla. S.D. LOCAL RULE 7.1(3)(A) MEET AND CONFER CERTIFICATION

I, Lawrence M. Meadows , Pro Se Plaintiff and moving party, made multiple attempts via email to confer with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion, but was steadfastly rebuffed by Terrence Conner, and therefore unable to do so. (Exhibit 1)

Verified Motion
4

# SUMMARY OF FACTS

### Procedurally Flawed & Fraudulent Claims Reviewer WME and Plan Administrator's Use of WME's Fraudulent "Independent" Doctors Reports to Terminate Disability Claims

1.      On May 30, 1997, WME's Co-founder and Corporate Medical Director, Dr. Howard T. Douglas was disciplined by the Texas Medical Board, who suspended his Medical License and assessed an Administrative Penalty of $10,000, *"due to unprofessional or dishonorable conduct that is likely to deceive or defraud the public, and professional failure to practice medicine in an acceptable manner consistent with public health and welfare."* (Exhibit 2).

2.      On Aug. 9, 2004, Dr. Douglas' daughter, Barbara Douglas formed Western Medical Evaluators, Inc., registering it as a Nevada corporation, and she subsequently appointed her father, Dr. Douglas as WME's Corporate Medical Director. (Exhibit 3).

3.      On Aug.25, 2006, the Texas Medical Board once again disciplined Dr. Douglas for his *"failure to timely release billing and medical records"*, and he again *"entered an Administrative Agreed Order Assessing an Administrative Penalty of $500."* (Exhibit 4).

4.      On Aug. 30, 2006, WME's manager published an online *"RIPOFF REPORT"*, entitled *"Western Medical Evaluators, a ripoff to all employees and as well as worker's comp patients"* ; and went on to say, "*I have come to witness...fraudulent acts within the company...They owe all their contracted doctors money for back exams* which have already been paid by the insurance carrier [plan administrator]. *Western Medical Evaluators,, Inc. is being sued by a number of their Dr's for this very reason. The Doctors who work for this company are told they get paid more money for the exam if the patient has reached Maximum Medical Improvement* [taken off claim]*, so the Dr's place most of their patients that way."* (Emphasis added). (Exhibit 5).

5.      On March 21, 2007, American Airlines PBAC's Managing Officer and Benefits Fiduciary, Charlotte Teklitz, entered a contract with WME for a "Consulting Agreement" to perform independent medical reviews of pilot disability claim disputes. (Exhibit 6).

6.      WME was not a "Clinical-Source" as required under the Summary Plan Document ¶ 5.4(c) [AR/Meadows 000636], and Supp-F ¶ 5.(h) of the CBA [AR/Meadows 000841-842], but instead was simply a medical billing and accounting service, owned by Barbara Douglas, with her father Dr. Howard Douglas serving as the

Verified Motion

5

Corporate Medical Director, with only 6 employees, working out of a small administrative office located in a industrial park at 1302 Teasely Lane in Denton, TX. (Exhibit 7).

7.          On Aug. 24, 2007, just five months after the PBAC hired WME,  the Texas Medical Board disciplined Dr. Douglas for the third time, once again for *"failure to timely release billing and medical records"*, and  he *"entered an Administrative Agreed Order Assessing an Administrative Penalty of $500."* See Exhibit 4 *Id.*

8.          On Sep.18, 2007, PBAC Recording Secretary, Deborah Jameson wrote a letter to informing WME, that *"significant delays in claim response time... had become problematic"*, and  *"Despite this contractual requirement, Western's failure to complete the reviews within a timeframe that recognizes the Company's obligation to satisfy U.S. Department of Labors' regulation is continuing, and that failure continues to place, AA in jeopardy if such claims are challenged."* (Emphasis added). (Exhibit 8).

9.          On Oct. 9, 2007, The Texas Worker's Comp division, issued Order # DWC-7-0111 and fined Dr.  Howard Douglas $2,000.

10.          On Dec. 26, 2007, the very day after Christmas, American's Corporate Medical Director, Dr. Thomas Bettes, abruptly stripped away Plaintiff's pilot disability benefits without notice, cause, or due process under either the  Plan and or the pilot's CBA.

11.          Subsequently Plaintiff timely submitted a disability benefits claim appeal package to the PBAC. Supported with the formal written opinions and clinical evaluation report supporting his continued disabling illness. Which was prepared by Clinical Physiatrist Nurse Specialist, his board certified Psychiatrist, and his pilots union's medical expert, an FAA certified Aviation Medical Examiner, M.D.

12.          On May 8, 2008, PBAC Recording Secretary, Deborah Jameson, requested WME perform an medical review evaluation of Lawrence Meadows disability. [AR/Meadows 000153-154].

13.          On June 5, 2008, WME sent the PBAC its purportedly  "independent" medical doctors reports for Lawrence Meadows, which wrongly opined that  the *"evidence does not reflect objective findings of"* a disabling illness, and *"There is no evidence of any impairments."* [AR/Meadows 000156-160].

14.     On June10, 2008, PBAC Recording Secretary, Deborah Jameson, sent Plaintiff a letter denying his PBAC appeal claim, *"Based upon the independent medical consultants' reports (Western Medical Evaluators)..."* [AR/Meadows 000168-175]. Which was specifically supported by the formal "'independent" report of WME's purported Senior FAA Medical Examiner, Dr. Karen Grant [AR/Meadows 000160].

15.     On July 15, 2008, WME was sued by its factoring company Capital Funding Solutions (hereinafter "CFS"), for engaging in *"two separate and distinct fraudulent schemes"* , to include, *"creating false medical claim forms for services never rendered"*, and a *"double-dip"* billing for the same claims involving *"misdirection of funds"* otherwise due CFS through *"wire fraud."* See *Capital Funding Solutions, Inc. v. Western Medical Evaluators, Inc. et al* (Fla. S.D. 0:08-cv-61106-PAS).

16.     In late July 2008, just one month after WME had reviewed and denied Plaintiff's and four other pilots claims; WME's had been sued by CFS, and was under investigation by Texas Mutual Insurance Company for felony medical claim and billing fraud. Just a few days later, its offices were forced to be closed by the Texas Department of Insurance.

17.     On July 31, 2008, former WME Report Department employee, Leighanne Griffin provided sworn testimony that, *"<u>Barbara Douglas has asked all of her employees to do illegal things in their daily jobs... I was told by Dr. Jerry Franz EVERY doctor had to approve their report before it was sent out.</u> When I mentioned this to <u>Barbara Douglas she said she was my supervisor and what she said goes. She also stated that if a doctor doesn't respond, send the report anyways.</u> Former report department employees told me <u>Barbara Douglas would complete the reports if she didn't want to wait on them</u>. She also answered Letters of Clarification for doctors, for the same reason not waiting on Doctors to answer."* (Emphasis Added). (Exhibit 9).

18.     On July 31, 2008, former WME Office Manager and convicted felon, Mary Ruth West, provided sworn testimony that ; *"<u>Western Medical had numerous lawsuits pending from doctors who had worked for Western in the past who had not been paid for services.</u>"*, and *"had a history of not paying its doctors, and thus <u>doctors would usually move to other companies.</u>"* Further that WME, "*<u>had also experienced numerous problems with employees and a had a startling turnover in office help.</u>"* Additionally,

that, *"There were many arguments between Tom* [Dr. Howard  T.] Douglas [WME's Corporate medical Director] *and Barbara Douglas* [WME's CEO] *regarding money..."* , and *"that they did not follow any rules or procedures [insurance claims regulations] regarding their business."* (Emphasis Added). (Exhibit 10).

19.       On Aug. 1, 2008, PBAC Recording Secretary, Deborah Jameson sent a letter, countered signed by AA Senior Attorney, John Gross,  informing WME  of  a "Notice of Material Breach and Termination of Contract with American Airlines, Inc." , and terminated WME's Contract, and also requested return of open pilot appeal files. See Exhibit 8  *Id.*

20.       On Aug. 2, 2008 , a Travis County, TX  Grand Jury, indicted both of WME's principal; Dr. Howard Douglas, and his daughter Barbara Douglas for felony medical claim fraud committed between February  2007 and July 2008. (Exhibit 11). The very same relevant period during which WME reviewed  the disability claims of American pilot's Mr. Meadows, Mr. Preitz, and  Ms. Emery. These indictments  resulted from a Texas Mutual Insurance investigation conducted as part of its zero tolerance for insurance fraud policy. (Exhibit 12).

21.       On Aug. 29, 2008, the Texas Worker's Comp Division, issued an  order # DWC-08-008 , and once again fined Dr. Douglas, this time  for $10,000. (Exhibit 13).

22.       On Feb. 21, 2013, a Travis county district court convicted  Dr. Howard T. Douglas, his company Western Medical Evaluators for felony Workers' Compensation fraud-related charges, and order them to pay $98,000 in fines. (Exhibit 14).

23.       On Feb. 25, 2013,  Barbara Douglas pleaded no contest to felony Workers' Compensation fraud-related charges, and was sentenced to pay restitution. (Exhibit 15).

24.       On April 15, 2013, Dr. Howard T. Douglas's son, Dr. Michael Douglas pleaded guilty to charges of perjury, for his false statements made in defense of his father's and sister  Barbara's,  involvement in felony Workers' Compensation fraud. (Exhibit 16).

**Prior to The Court's Final Judgment Defendant's Was Aware of WME's Fraudulent "Independent Doctor" Reports**

25.       Sometime in 2010,   American was put on notice in another disabled American pilot's ERISA case, *Emery v. American Airlines, Inc.,*  (Fla. S.D., Case 1:08-cv-22590-WMH), Ms. Emery submitted evidence to the Court that her WME reports purported to

have been written by Dr. Grant, had *"cut and paste signatures"*, and were suspected to be fraudulent.

26.      In Nov. 2011, American was again put on notice in yet another disabled American pilot's ERISA case, *Preitz v. American Airlines, Inc.* (PAEDCE 2:2011-cv-00044). Mr. Prietz submitted an affidavit from Dr. Karen Grant, stating that the report submitted by WME purported to have been written and signed by her was not of her doing. (Exhibit 16).

27.      On May 9, 2012, American Airlines Headquarters hometown newspaper, The Fort Worth Star-Telegram, published a story entitled**; *"Hurst Doctor indicted in worker comp charges --again"*.** The story discusses WME's former medical director, Dr. Douglas's third felony indictment on May 1, 2012, stating *"Dr. Howard T. Douglas the III, is no stranger to regulatory and criminal accusations."* The story goes on to discuss his company being accused of medical claim and billing fraud *"from December 2007 to December 2009"* and that he was also *"indicted in August 2010 [second time], along with his daughter Barbara Douglas and her Company Western Medical Evaluators, for felony workers' compensation fraud-related charges."*, and also how the Texas Medical Board suspended his medical license and fined him $10,000 for *"unprofessional conduct likely to deceive or defraud the public..."* This amounts to public notice. (Exhibit 17).

28.      After the July 2013, Allied Pilots Equity Distribution, Plaintiff learned that another disabled American Airlines pilot. Mr. Preitz, had secured an affidavit from WME's Dr. Karen Grant, stating the WME report purported to be written by her was not of her doing. See Exhibit 16 *Id.*

29.      Subsequently, Plaintiff, submitted copies of his, Preitz's and Emery's reports purported to have been written by WME's Dr. Grant; which had distinctly different signatures and letterhead; and requested she examine them. (Exhibit 18).

30.      On Feb. 24, 2014, Plaintiff finally received a signed declaration from Senior FAA Aviation Medical Examiner, Dr. Karen Grant. Wherein, she stated the "independent" medical doctors report WME and Defendants had purported to be her work [AR/Meadows 000160], was not of her doing. (Exhibit 19).

31.      On Feb. 27, 2014, Plaintiff put American's Executive V.P. of the Flight
Department on notice of Dr. Grant's declaration, via his oral argument, written brief and
exhibits submitted to during his recent Termination Grievance Hearing (#13-064).
See Exhibit 19 *Id.*

On Feb. 28, 2014, Plaintiff put American's General Counsel/Chief of Corporate
Affairs, Mr. Steve Johnson, and American's corporate house counsel, AA Senior
Attorney, Marjorie Powell, on notice of Dr. Grant's declaration via personal hand
delivery to each. See Exhibit 19 *Id.*

32.      On Mar. 11, 2014, Plaintiff put American Airlines local ERISA Counsel,
Terrence Conner and Jennifer Ellis, of Hunton & Williams, LLP, on notice of newfound
evidence of Dr. Grant's fraudulent report. Further, he made a good faith effort to meet
and confer, but said requests were ignored. See Exhibit 1 *Id.*

### Defendants Counsel Has Acted Unethically and In Bad Faith

33.      On Mar. 14, 2014, Plaintiff served upon Defendant's Counsel his Second Rule
11(b) Motion for Sanctions, and will file with this Court in 21 days. (Exhibit 20).

## ARGUMENT

### A.  Defendant's Unethical Conduct Not Discrete Act but Instead a Serial Violation of the Rules

This isn't the first time Defendants counsel has acted in bad faith and engaged in
unethical conduct in this matter, but instead this is a continuation of its serial ethics and rule
violations. Moreover, Defendant's Counsel has clearly shown a willingness to not play by the
rules, taking whatever action necessary to and pervert justice to obtain its desired results.

Throughout, the pendency of these proceedings Defendant counsel has engaged in the
following bad faith acts and unethical behavior; 1) Concealment of relevant information to
include key documents[1] relating to Defendant's *"Pilot Disability Nurse Case Management Cost*

---

[1]      These documents were produced only after Defendant was sanctioned for discovery
violations in another disabled pilots case in this very same district court. *See Emery v. American
Airlines, Inc.,* (Fla. S.D., Case 1:08-cv-22590-WMH ).

*Savings"* scheme[2], and the procedural irregularities and fraud of its "Independent" medical doctor disability reports, prepared by claims reviewer Western Medical Evaluators, Inc., 2) Concealment of evidence showing existence of both Structural and Actual conflict, using a "cost savings" scheme to aide its grossly underfunded pension plans, which amounted to securities fraud under Sarbanes-Oxley Act (hereinafter, "SOX"), 3) Retaliation, within just two weeks of engaging in protected SOX Whistleblower activity[3]; to include Termination of Meadows employment and permanent removal from the Pilot System Seniority List.  4) Defendant's local counsel, Ms. Mora, called in sick on the eve of the Feb. 23, 2011 deposition of American's disability case manger, Nurse Jeanne Spoon, after Plaintiff's counsel was already at the airport enroute to the deposition at American's Headquarters in Dallas, 5) Violation of Fed. Rule Civ. 26(a), based on withholding key documents, and untimely production of "Costs Savings" reports on Mar. 11, 2013, almost four months after initial discovery requests, and only two weeks before this court entered Final Summary Judgment, 6) Postponed deposition of Nurse Spoon for one month, and rescheduled it for Mar. 23, 2011, the very day before this court

---

[2]     The *"Pilot Disability Nurse Case Management Cost Savings"* scheme, was implemented by American Airline's Medical Department to fraudulently deny and/or terminate rightful pilot disability benefits based on cost saving alone. In an effort to aide with grossly underfunded Pension Plans, which annual SEC 10-K reports showed to be underfunded by $2.5B. This scheme used highly structured cost savings reports, and net present value calculations of the cost savings achieved if benefits were prematurely terminated. Further, these reports tracked Meadows as one of the 84 disabled pilots who were targeted for cost savings. (Bates AA-000181). Based on Meadows discovery of the pilot disability cost savings scheme, facilitated through the use of "WME", Meadows reasonably believed American was intentionally underfunding rightful disability pension funding obligations, which thereby artificially inflated its reported corporate earnings, giving rise to SEC fraud under the Sarbanes-Oxley Act.

[3]     Meadows filed a SOX Whistleblower Complaint in Sep. 2011. That case complaint is pending a Department of Labor ALJ hearing on Aug. 18, 2014, along with separate EEOC charges of discrimination and retaliation. However, just two weeks after engaging in his protected whistleblower activity, American threatened Meadows with termination; and ultimately removed him from the pilot system seniority list, and terminated his employment.

entered its Final Summary Judgment, 7) Falsified Certification of Meet and Confer with Plaintiff's counsel on Defendant's Motion for Bill of Costs, 8) Failed to timely provide, certify, or verify Draft Attorney's Fee motion with timekeeper information, 9) Refused to stipulate to withdraw its untimely and defective Motions for Bill of Cost and Motion for Attorney's Fees, 10) Defendant made disparaging remarks about Plaintiff and material misrepresentations to the Court in its filed combined Reply in support of its Costs and Attorney Fees Motions, which was ultimately stricken by this Court after Plaintiff filed his first Rule 11(b) motion, <u>and most egregious of all, 11) Submitted to this Court fabricated and forged "independent" medical doctors reports from Western Medical Evaluators, Inc.,</u> 12) Refused meet and confer, or to withdraw its fraudulent submissions, thereby, forcing Plaintiff to serve Defendant's Counsel with a 2nd Rule 11(b) Motion for Sanctions, and finally, 13) ) On March 14, 2014, Defendant's Counsel, Terrence Conner made an unauthorized release of Plaintiff's Confidential Settlement Demand and Economic Expert Report, made under Fed Rule Edv. Rule 408, and released it to third parties, making it vulnerable to publication in a public forum.

## B. Plan Administrator Breached its Fiduciary Duty to Provide Full and Fair Review and Used a Procedurally Flawed and Fraudulent Independent Disability Claims Reviewer

American Airlines' PBAC was required under the Summary Plan Document and Supplement -F ¶ 5.(h) of the CBA [AR/Meadows 000841-842] , to submit all disability claims disputes to an third party "Clinical-Source"[4], for an "Independent Medical Evaluation" (IME).

---

[4]      The medical definition of *"clinical"* according to the Merriam-Webster Dictionary is; *"of, relating to, or conducted in or as if in a clinic: as **a** : involving or concerned with the direct observation and treatment of living patients…**b** : of, relating to, based on, or characterized by observable and diagnosable symptoms of disease."* Interestingly, as an example, Merriam Webster provides, <u>*"the clinical picture on admission was that of mild depression in an extremely rigid personality."*</u>

(SOF ¶ 6).  Meaning an actual independent clinical examination performed in a medical  facility such as an hospital, university, or other credible medical entity. Instead, American in furtherance of its *"Pilot Disability Nurse Case Management Cost Savings"* scheme, the PBAC selected a horrible and dirty company, WME. Who was known in the industry for promising its subcontracted doctors 120% of normal exam fees for any claimant that  was shown a  Maximum Medical Improvement, thereby removing them from claim and saving insurers and plan administrators money. (SOF ¶ 4.)  Unfortunately, too late to prevent for Plaintiff flawed and fraudulent review, but after the PBAC terminated WME, American subsequently selected the world renown Mayo Clinic.  In  June, 2011, American's Corporate Medical Director ignored Plaintiffs request to have his claim re-reviewed by the  Mayo.  Plaintiff  subsequently went at his own expense to the Mayo for a clinical evaluation. The Mayo verified the existence of his disabling illness based on the very same medical records American Airlines  had in its possession,  which were improperly ignored by WME.

Now, the PBAC has since replaced Mayo, but appropriately with  another credible "Clinical-Source".  American's current disability claims reviewer is now the University of Texas Medical Branch - Galveston (hereinafter "UTMB").   The PBAC recently had UTMB review the Plaintiffs second PBAC appeal. On June 10, 2013, UTMB's Senior Aviation medical examiner, and forensic psychiatrist used the very same medical records that Dr. Bette's possessed in Dec. 2007,  and verified that under the terms of the Plan, the Plaintiff had been suffering continuously from the very same disabling illness since 2003. See [ECF No. 83, footnote 1 and 5].  As a result,

---

Indeed,  AA's contract with WME was eventually terminated and Mayo Clinic hired in its place, due to the insistence of APA's newly retained  national ERISA attorney, Dan Feinberg. Who asserted that first a *"credible clinical"* entity must be utilized for the medical reviews conducted in the appeal of a pilots' claim. *See Progress in APA's Fight to Preserve Your AA Disability Benefits*, Captain Bill Haug, APA Secretary-Treasurer, Flightline, Jan. 2010 edition, p. 4-5.

Verified Motion

on July 31, 2013 the PBAC awarded Plaintiff retroactive disability and Active Medical Plan benefits effective back through Dec. 27, 2007; the very next day after Dr. Bette's wrongfully terminated Plaintiffs benefits. The truth of the matter is, this amounts to a de facto admission of American's guilt, but they still adamantly refused to accept reasonability for their wrongdoing. Even now, despite the PBAC's recent award, American Airlines has refused Plaintiff's additional claims for benefits under the Plan to which he was entitled and awarded. Specifically, American continues deny Plaintiff reimbursement for almost $95,000 in lost disability and medical benefits, and failed to provide him with the Active Medical Plan benefits he was promised,

Clearly, American's Plan Administrator, the PBAC, failed to do any due diligence, and breached its fiduciary duty when selecting WME. A simple Google search of "Western Medical Evaluators" would have yielded a "Ripoff Report" written by WME's former office manager, who stated that; WME promised its contracted doctors 120% of the normal exam fee to deny claimants and return them to full functional capacity, thereby denying their disability or workers compensation claims. (SOF ¶ 4). After that red flag, a second Google search of WME's Medical Director, Dr. Howard T. Douglas should have been conducted. Which would have revealed that Dr. Douglas, previously had his medical license revoked, due his, *"unprofessional or dishonorable conduct that is likely to deceive or defraud the public, and professional failure to practice medicine in an acceptable manner consistent with public health and welfare.".* (SOF ¶ 1 and 3). Moreover, as early as Sep. 18, 2007 the PBAC was clearly aware of WME's ongoing failures, whereby it placed American in jeopardy with the Department of Labor. (SOF ¶ 8).

Furthermore, the "Ripoff Report", would have lead the PBAC to realize that WME was in multiple lawsuits, financially troubled, and wasn't paying its contracted doctors. (SOF ¶ 4). As a result, WME sold its accounts receivable to a factoring company, Capital Funding Solutions

to raise capital. Thereafter, WME was ultimately sued in this Court, by CFS for engaging in *"two separate and distinct fraudulent schemes."* Whereby, it continued to double bill plan administrators, using *"cut and paste invoices"* invoices, and misdirected payments from CFS. through mail and wire fraud. (SOF ¶¶ 4, 15 and 18).  Additionally,  during the relevant time period when Plaintiff's claim was reviewed by WME,  was the very same time WME wasn't paying  its subcontract doctors; who as a result began withholding their services and reports. (SOF ¶ 4, and 17). However, sworn testimony of WME Report Department employees, showed that <u>WME owner Barbara Douglas,</u> *"asked all of her employees to do illegal things",* and *"what she said goes",* and further when she didn't want to wait on doctors  for their legitimate doctors reports she would *"complete the reports"* herself.</u> Which ultimately resulted in her fraudulent fabrications and forgeries of doctors reports. (SOF ¶ 17.).

Bottom-line, WME was simply coded as a medical billing and accounting service (SOF ¶ 6), and in reality was nothing more than an administrative worker's comp claim processing sweat shop; who acted as a paid  "hired-gun" denying as many claims as possible, inure to the benefit of greedy plan administrators like the PBAC.  Either the PBAC knew this, or deliberately breached its fiduciary duty to Plan participants like the Plaintiff.

## C.  "Smoking Gun" - Newly Discovered Evidence  Showing WME's "Independent" Medical Doctors Reports  Used to Deny Plaintiff's Disability Benefits Were Fraudulent

Defendant denied Plaintiff's disability benefits using reports that were allegedly prepared by "independent" medical doctors from Western Medical Evaluators, Inc (WME). Specifically, Defendant  submitted to the Court a "independent' medical doctors report purportedly prepared and signed by Senior FAA Aviation Medical Examiner, Dr. Karen Grant as shown in the Administrative Record, at [AR/Meadows 000160]. (SOF ¶¶ 12-14).  Said report was used by American's Pension Benefits Administration Committee (PBAC) to support termination of

Plaintiff's disability benefits. Thereby, depriving Plaintiff of the full and fair review to which he was entitled under ERISA.

However, during the recent American Airlines-Allied Pilots Association Equity Distribution Arbitration in late July 2013, Plaintiff learned that another disabled American Airlines pilot, Wallace Preitz, was similarly stripped of his disability benefits submits using "independent" medical doctors reports prepared by WME. See *Preitz v. American Airlines, Inc.* (PAEDCE 2:2011-cv-00044). During the Arbitration Mr. Preitz submitted an affidavit from Dr. Karen Grant, stating that the report submitted by WME purported to have been written and signed by her was not of her doing. (SOF ¶ 28 ). Further, Mr. Preitz's counsel had put Americans local ERISA counsel on notice of Dr Grants fraudulent independent doctors report in Nov. 11, 2011 (SOF ¶ 26). Additionally, during those same arbitration proceedings, Plaintiff also spoke to a third disabled American Airlines pilot, Ms. Kathy Emery was also similarly stripped of her disability benefits using independent medical doctors reports prepared by WME, and specifically Dr. Karen Grant. See *Emery v. American Airlines, Inc.,* (Fla. S.D., Case 1:08-cv-22590-WMH). Ms. Emery had previously submitted documents to this Court, and informed American's local ERISA counsel sometime during 2010, that her WME reports purported to have been prepared by Dr. Karen Grant had *"cut and paste signatures".* (SOF ¶ 25). Now that American Airlines has exited bankruptcy, the stay was recently lifted, and both Preitz's and Emery's ERISA disability cases are pending adjudication.

This confirmed the Plaintiff suspicions that his WME reports were also likely fraudulent. He subsequently contacted Dr. Grant's office, and submitted copies of his, Emery's and Preitz's reports each showing distinctly different signatures; asking Dr. Grant to examine those reports and verify if Mr. Meadows' report actually contained her opinions and signature. (SOF ¶ 29).

Finally, on Feb. 24, 2014, Plaintiff received a signed declaration from Dr. Karen Grant; wherein she stated the report WME and Defendants purported to be her work, was not of her doing. Specifically, she declared ;

> *"I have no records in my possession regarding Mr. Lawrence Meadows. I do not have any written agreements, contract, service agreement, purchase order, or similar documents  between myself and Western Medical Evaluators, Inc...* <u>*I can tell you any copy of Western medical Evaluators, Inc letterhead purported to have written and signed by me was not of my doing. I do not have nor have I ever had any of their stationary.*</u> *I have never had a practice in Denton, Texas."* [as otherwise shown on WME's report]. (SOF ¶ 30).

In Sum, Dr. Grant's declaration clearly and definitively proves that the supposed "independent" medical doctors reports, performed  by WME and submitted by Defendant to support its denial of Plaintiff's disability benefits, was nothing more than a fraudulent fabrication and forgery. Indeed, the Defendant and its Counsel either knew this, or should of known this, and in fact at minimum knew this after being put on notice in three separate pilot cases, newspaper articles, and press releases, well before the final mandate was issued.

## D.  The Defendant and Its Counsel Mislead and Knowingly Allowed the Court  to Detrimentally Rely Upon on WME's  Fraudulent "Independent " Doctors Reports

Furthermore, American's concealment of  its use of  procedurally flawed and fraudulent independent medical reviewer, WME,  coupled with its false  representations and submissions; shows it knowingly mislead the Court to believe those reports were otherwise legitimate and "independent",  allowing the Court to detrimentally rely on those reports, which contributed significantly to Plaintiff receiving an adverse Final Summary Judgment ruling. Wherefore, the Court's Opinion relied heavily fact that even if Dr. Bettes decision to terminate Plaintiff's benefits was wrong, American didn't act unreasonably because it relied on opinions of independent medical doctors, and specifically stated in part;

> *"A de novo review of the evidence presents a close question as to whether Mr. Meadows was "disabled" under the Plan on and after December 26, 2007."* [ECF No. 48, pg 16], *and that it was, "...a debatable question of fact as to whether Meadows was "disabled" at the time his benefits were terminated. <u>Nevertheless, even if this court were to determine Defendant's decision was wrong, the court cannot say the decision was unreasonable for reasons stated below.</u>"* [ECF No. 48, pg.19] and further reasoned, *"<u>Additionally, Defendants rely on the opinion of the independent medical doctors ["WME"] evaluating the sufficiency of Mr. Meadows claim.</u>"* [ECF No. 48, pg.24]. (Emphasis added).

The newfound "smoking-gun", incontrovertible evidence of Dr. Grant's Declaration, clearly shows that American Airlines was not only wrong in denying Plaintiff's pilot disability benefits claim, but was also most certainly unreasonable in doing so. (SOF ¶ 29). Had the Defendant and its Counsel not mislead the Court with the fraudulent "independent" medical doctors reports of WME, the outcome in this case would have been decidedly different,

## E.  Enforcement of Rule 60(b) and 60(d) Are Warranted Given Defendant's Misrepresentations, Misconduct, Fraud, False Evidence, and Failure of Its Duty For Candor Toward the Tribunal

The Plaintiffs' newfound "smoking-gun", declaration of Dr. Grant, is clear and convincing evidence showing that Defendants and its counsel, has made multiple misrepresentations in signed pleadings[5], further supported by false evidence submitted to the Court. More specifically, Defendant's mislead this Court into believing, that Plaintiff was given a full and fair review using "independent" medical doctors reports. In bad faith effort to obtain an ill-gotten ruling. Defendants thereby, violated not only Rule 60(b)(2), and (3); but also Fla. S.D. Local Rule 11.1(c)., which indirectly incorporates, Florida Professional Rule of Conduct 4-3.3 CANDOR TOWARD THE TRIBUNAL, (a) False Evidence; Duty to Disclose. A lawyer

---

[5]     Defendants have misrepresented that they have provided Plaintiff's claim a full and fair review required ERISA and the SPD, and supported such with fraudulent "independent" doctors reports, within but not limited to the following pleadings; ECF Nos. 15(¶22), 23,29,30,36, 37, and in the submitted Administrative Record, [AR/Meadows 00156-174; which is required as per 000754, and 000841-842].

shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

Rule 60(b) strikes a balance between finality of judgments and fairness in the proceedings.9292 R.C. by *Ala. Disabilities Advocacy Program v. Nachman*, 969 F. Supp. 682, 690 (M.D. Ala. 1997); *see also Drake v. Dennis*, 209 B.R. 20, 28 (S.D. Ga. 1996). *Chambers v. NASCO*, Inc., 501 U.S. 32, 44 (1991) (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)); *see also* United States v. Buck, 281 F.3d 1336, 1339 (10th Cir. 2002); *Abdur'Rahman v. Bell* (*In re Abdur'Rahman*), 392 F.3d 174, 193 (6th Cir. 2004) (Siler, J., dissenting).  Specifically, Rule 60(b)(3) codifies an "'historic power of equity to set aside fraudulently begotten judgments'. . . . [which] is necessary to [uphold] the integrity of the courts . . . ." (Emphasis added). *See Chambers,*, 501 U.S. at 44 (quoting *Hazel-Atlas Glass Co.*, 322 U.S. at 238). Additionally, a  sub-species of 60(b)(6), fraud upon the court, is subsumed in the broad language of 60(b)(6). It implicates the court's institutional integrity and enables the court to manage its own affairs As discussed in section A(iii), protecting against fraud is an inherent power of the court.

Consequently, here, there  is grounds for this Court to grant relief from judgment under both 60(b)(3) and 60(b)(6), and set aside its Order and Final Summary Judgment.  Fraud upon the court is extended to officers of the court, and when an attorney exerts improper influence on the court  [as was the case here] "the integrity of the court and its ability to function impartially is directly impinged." *R.C. by Ala. Disabilities Advocacy Program*, 969 F. Supp. at 691 (citing *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.,*12 F.3d 1080, 1085-86 (Fed. Cir. 1993)). In addition, although 60(b)(3) seems to cover fraud, it only concerns fraud *of an adverse*

*party*. *See* FED. R. CIV. P. 60. Rule 60(b)(6),on the other hand, has very broad language: "any other reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60.

Protecting against fraud under this rule is the same a s the court's ability to impose sanctions through its Rule 11-like power. *See R.C. by Ala. Disabilities Advocacy Program*, 969 F. Supp. at 690. The fraud dealt with in Rule 11, in the inherent power to sanction discussed in Section III(iii), and in 60(b), is the same type of fraud; thus, the same issues of institutional integrity are relevant in all three contexts. The enforcement of Rule 60(b) and (d) is essential to the maintenance of social order. Therefore, this Court has grounds to do so here, and should do exactly that.

As noted in Argument B. above, American and its Counsel was put on notice of the fraudulent 'independent" medical doctors reports of WME's Dr. Karen Grant, multiple times in various cases over the past few years, but still ignored its duty of candor towards this tribunal. Specifically, the Defendant was put on notice; 1) In Pilot Mr. Preitz's PAECDC ERISA case in Nov. 2011, 2) In Pilot Ms. Emery's Fla. S.D. EIRSA case during 2010, 3) By Mr. Meadows via his oral argument, brief, and exhibits submitted to American's Executive V.P. of the Flight Department during his recent Feb. 27, 2014 Termination Grievance Hearing (#13-064), 4) On Feb. 28, 2014, by Mr. Meadows via personal hand delivery to American's General Counsel and Chief Executive Officer of Corporate Affairs. Mr. Steve Johnson, 5) On Feb 28, 2014 by Mr. Meadows via personal hand delivery to American's Corporate in-house counsel overseeing his ERISA case, Senior Attorney Marjorie Powell, and finally, 6) On Mar. 11, 2014, by Mr. Meadows via email to American Airlines local ERISA Counsel, Terrence Conner and Jennifer Ellis, of Hunton & Williams, LLP.

Sadly,  it's now readily apparent that, American Airlines and its Counsel both  either knew,  or most certainly should have known, that all along  WME's  purportedly "independent' medical doctors reports were in fact fraudulent fabrications and forgeries. Moreover, Defendants had multiple opportunities to correct its false statements of material fact to this tribunal. But for its continued bad faith concealment of fraud upon this Court, it could have otherwise  prevented this travesty of justice, and waste of judicial resources.

Regardless, to date, American and its Counsel continue to defiantly ignored these damning facts,  and  have refused to correct their misrepresentations, to include material misstatements of fact, false evidence, and fraud upon this Court.  Thus,  leaving, the  Plaintiff with no choice but serve upon Defendants Counsel  his Second Rule 11(b) motion on Mar. 14, 2014; which he intends to file with this Court after the 21 day safe harbor. (SOF ¶ 34).

## CONCLUSION

Based on all the foregoing, and pursuant to Fed. Rule Civ. P. Rule 60 (b), Plaintiff humbly submits that the Court should grant relief from its Order and Judgment; based on newly discovered evidence of  of  Defendant's and its Counsel's misrepresentations,  misconduct, and fraud, or for any other reason that this court deems would justify such relief.   Alternatively, Plaintiff request this Court exercise its inherent powers under Rule 60(d), and set aside its Order and for fraud on the court. It is clear from the facts and record evidence that Defendant's counsel also willfully disregarded its duties of Candor Towards The  Tribunal.  Here, Plaintiff submits there was also a willful disregard of the ethical discretion.

The Plaintiff is sickened and appalled as he writes this, and believes the Court should be appalled as well. Therefore, Plaintiff respectfully requests the Court set aside its Order and Final Summary Judgment [ECF. No. 48, 49], and instead grant Plaintiff's Motion for Summary

Judgment [ECF No. 31,32], and any other relief this Court deems appropriate; to include

awarding liquidated damages of Plaintiff's attorneys fees and costs[6], needlessly and

unnecessarily incurred as a result of Defendant's bad faith unethical conduct. To do otherwise

would be a travesty of justice, and leaving the Plaintiff  wronged, harmed and remediless.


Signed: March 18, 2014,                              Respectfully submitted,

Lawrence M. Meadows, Pro Se
Po Box 4344
Park City, UT 84060
Telephone: (516) 982-7718
Facsimile: (435) 604-7850
lawrencemeadows@yahoo.com

---

[6]    Upon Courts request, Plaintiff will provide affidavit and supporting documents proving all attorneys fees and costs incurred in his Fla. S.D./11h Cir. EIRSA litigation, totaling approximately $151, 399.28

## **VERIFICATION**

I, Lawrence M. Meadows, declare as follows;

I am on the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of Florida that the foregoing is true and correct.

Date: March 18,  2014,

Lawrence M. Meadows, Pro Se

## <u>NOTICE OF REQUEST FOR HEARING ON<br>PLAINTIFFS MOTION AND MEMORANDUM FOR  RULE 60(b) RELIEF<br>TO SET ASIDE ORDER AND FINAL SUMMARY JUDGEMENT<br>BASED ON NEWFOUND EVIDENCE, FRAUD AND MISREPRESENTATION; OR<br>ALTERNATIVELY USING THE COURTS OTHER POWERS UNDER RULE 60(d)</u>

I,  Lawrence M. Meadows, plaintiff,  in the above styled cause, hereby files this Notice to

Request hearing on the above referenced matter motion in accordance with  Fla. S.D. Local Rule

7.1(b)(2), as this is a serious matter which requires the full consideration of the Court, and the

Plaintiff should be allowed to fully argue it.  Unless, the Court in its discretion deems it

appropriate to award requested Relief without such hearing.

Signed: March 18, 2014, and                              Respectfully submitted,

Lawrence M. Meadows, Pro Se
Po Box 4344
Park City, UT 84060
Telephone: (516) 982-7718
Facsimile: (435) 604-7850
lawrencemeadows@yahoo.com

Verified Motion
24

## **Certificate of Service**

**I hereby certify,** that a true and correct copy of the foregoing was served by U.S. Mail and E-mail on March 18, 2014 on all counsel or parties of record on the Service List below.

Signature of Filer
Lawrence M. Meadows, Pro Se

## **SERVICE LIST**

**Terrence G. Conner,  Esq.**
**Jennifer D. Ellis,  Esq.**
**Grace M. Mora,  Esq.**
Hunton & Williams, LLP.
1111 Brickell Avenue
Suite 2500
Miami, FL 33131
Telephone: (305) 810.2500
Fax: (305) 810.2460
Email: tconner@hunton.com, jellis@hunton.com, gmora@hunton.com
Lead Counsel for Defendant
Attorneys for Defendant

# **EXHIBIT 1**

**MEET AND CONFER EMAIL CHAIN**

**From:** Lawrence Meadows [mailto:lawrencemeadows@yahoo.com]
**Sent:** Tuesday, March 11, 2014 10:05 AM
**To:** Connor, Terence G.; Ellis, Jennifer D.
**Subject:** Meet and Confer - Case No. 10-22175-Civ-Altonaga/Brown

 Dear Mr. Conner and Ms. Ellis,

While I understand you have been dealing with Mr. Colemere on my SOX matter, I want to
clarify that still represent myself in all other matters related to American Airlines, Inc., and the
PBAC.

Therefore, as a matter professional courtesy, I am making a good faith effort to meet and confer
with you, on a very important matter as it relates to the above reference case.  I am now in
possession of newfound incontrovertible evidence , showing that you have submitted fraudulent
documents, which were used to support material misrepresentations made by you in various
pleadings. Upon which the Court detrimentally relied, in its opinion  and final summary
judgment.

Once we confer, I think you will agree that the best course of action will be a mutual stipulation
to vacate the final judgment,  which will spare you from professional embarrassment and
sanctions.  You can reach me via email or on my cell phone at 516-982-7718.

If I don't hear from you by 5:00 pm est. on Wednesday, I will be left with no choice but to serve
upon you yet another Rule 11.

 Sincerely,

Lawrence Meadows
Pro Se Plaintiff


On Mar 11, 2014, at 9:58 AM, "Connor, Terence G." <tconnor@hunton.com> wrote:

Dear Mr. Meadows:
We will not be contacting you in this matter.  We encourage you to engage your counsel for
advice on whether your proposed filing is itself a frivolous initiative, remediable under Rule 11.
We believe you will be wasting our and the court's time, perhaps an  avoidable detour  with
sound advice from your attorney.

Terence G. Connor
Hunton & Williams LLP
1111 Brickell Ave
Suite 2500
Miami, FL  33131
305.810.2517

On Tuesday, March 11, 2014 10:39 AM, Lawrence Meadows <lawrencemeadows@yahoo.com> wrote:

Mr. Conner,

Well I'm shocked by your continued arrogant defiance as you further attempt to maintain you and your clients fraudulent house of cards, and Ill-gotten judgments. You sir have been caught with your hand in the cookie jar.

I don't know how you confuse curing the manifest injustice which has resulted from you and your clients fraudulent submissions and representations, with me wasting the Courts time by identifying it.

As I said unless a stipulation is reached by tomorrow at 5pm, I will be serving a Rule 11 upon you and Ms Ellis, along with a Rule 60. Additionally, I believe this matter should also likely be brought to the attention 11 Cir. Panel and the Florida Bar.

Best,

Lawrence Meadows


On Tuesday, March 11, 2014 3:29 PM,

Dear Mr. Meadows:
We will not be contacting you in this matter. We encourage you to engage your counsel for advice on whether your proposed filing is itself a frivolous initiative, remediable under Rule 11. We believe you will be wasting our and the court's time, perhaps an avoidable detour with sound advice from your attorney.

Terence G. Connor
Hunton & Williams LLP
1111 Brickell Ave
Suite 2500
Miami, FL 33131
305.810.2517


On Mar 11, 2014, at 3:36 PM Lawrence Meadows <lawrencemeadows@yahoo.com> wrote:
Me: To tconnor@hunton.com Jennifer D. Ellis

Very well then Mr. Conner, I understand this to be your refusal to meet and confer, and will inform the Court accordingly. However, please be advised I am my own counsel, acting Pro Se in my ERISA matters and, will be contacting you in the form of service of aforementioned motions.
Sincerely
Lawrence Meadows

# EXHIBIT   2

**TEXAS MEDICAL BOARD**
**TEXAS PHYSICIAN ASSISTANT BOARD**
**TEXAS STATE BOARD OF ACUPUNCTURE EXAMINERS**
*SAFEGUARDING THE PUBLIC THROUGH PROFESSIONAL ACCOUNTABILITY*

Search

Home
Look Up a Licensee
Services for Consumers
Services for Healthcare
Professionals
About Us
Upcoming Meetings,
Agendas & Minutes
Laws, Rules & Guidelines
News
Online Registration /
Renewals
Electronic Death
Registration
Reports & Statistics
Join Our eMail List

Archived Web Pages

### 1997 Press Releases

# May 30, 1997

### 25 Doctors Disciplined

During a Board meeting held May 8-10, 1997, the Texas State Board of Medical Examiners disciplined 25 licensed physicians. Of the disciplinary actions taken, there were eight suspensions with three of those suspensions stayed and probated under various terms and conditions; two revocations which were stayed and probated under various terms and conditions; two voluntary and permanent surrenders of license; eight restrictions with various terms and conditions and four public reprimands. In addition, six administrative penalties were assessed totaling $23,100.

### Governor Appoints Six Members to Board

Governor Bush has appointed six people to become Board members for the Texas State Board of Medical Examiners. Each of these members will serve terms until April 13, 2003.

### Lee S. Anderson, M.D.

Dr. Anderson is an ophthalmologist in Fort Worth and president of Retina Consultants, P.A. He is currently the president of the Tarrant County Medical Society and is a former trustee of Saint Joseph's Hospital. Dr. Anderson earned his medical degree from the University of Texas Medical Branch at Galveston. He will replace Dr. Catalina E. Garcia of Dallas, whose term expired.

### Peter Chang, M.D.

Dr. Chang is president and chairman of the board of Summit Medical Group, P.A. He has served as the chief of cardiology at Twelve Oaks Hospital and is currently a staff cardiologist at Methodist Hospital, St. Luke's Episcopal Hospital and Memorial Southwest Hospital. Dr. Chang earned his doctorate in biochemistry from Rice University and his medical degree from the University of Texas Medical School in Houston. He will replace Dr. John M. Lewis of Houston, whose term expired.

### Edward "Ed" S. Hicks, Sr.

Mr. Hicks is owner of Ed Hicks Imports. He has served on the president's council at Corpus Christi A&M University and Del Mar College. Mr. Hicks is also a member of the board of trustees of the Art Museum of South Texas and the Texas State Aquarium. The Board's newest public member, Mr. Hicks, will replace Cindy Jenkins of Stowell, whose term expired.

### Larry Price, D.O.

Dr. Price is an assistant professor at the Texas A&M University Health Science Center College of Medicine and senior staff cardiologist at Scott and

physically, mentally, and otherwise competent to practice medicine. Action due to disciplinary action taken by another state.

**Douglas, Howard T., M.D., Hurst, TX, Lic. #F1511**

A proposal for decision was heard concerning Dr. Howard T. Douglas on 5-10-97. The physician's license was suspended until such time as the physician proves that he is physically, mentally and otherwise competent to practice medicine. An administrative penalty in the amount of $10,000.00 was also assessed. Action due to unprofessional or dishonorable conduct that is likely to deceive or defraud the public and professional failure to practice medicine in an acceptable manner consistent with public health and welfare. Action will not be final until all appeals have been exhausted.

**Edwardson, Delbert L., M.D., Aransas Pass, TX, Lic. #E2197**

An Agreed Order was entered 5-10-97 restricting his license for 5 years under various terms and conditions. Action due to prescribing or dispensing to an habitual user, prescribing or administering a drug or treatment that is nontherapeutic in nature or nontherapeutic in the manner the drug or treatment is administered or prescribed, and professional failure to practice medicine in an acceptable manner consistent with public health and welfare.

**Farha, Abdul-Masih F., M.D., Houston, TX, Lic. #G0698**

An Agreed Order was entered 5-10-97 restricting his license for 3 years under various terms and conditions and assessing an administrative penalty in the amount of $1,000.00. Action due to professional failure to practice medicine in an acceptable manner consistent with public health and welfare.

**Fink, John Mark, M.D., Wharton, TX, Lic. #G1896**

A proposal for decision was heard concerning Dr. John Mark Fink on 5-10-97. The physician was publicly reprimanded. Action due to unprofessional or dishonorable conduct that is likely to deceive or defraud the public and professional failure to practice medicine in an acceptable manner consistent with public health and welfare. Action will not be final until all appeals have been exhausted.

**Fischer, Roy Lee, D.O., Heath, TX, Lic. #C4317**

An Agreed Order was entered 5-10-97 wherein the physician voluntarily and permanently surrendered his license.

**Gonzalez, Alfonso, M.D., Houston, TX, Lic. #C9360**

An Agreed Order was entered 5-10-97 suspending the physician's license until such time as he appears before the Board and provides sufficient evidence and information that indicates he is physically, mentally, and otherwise competent to safely practice medicine. Action due to conviction of a crime of the grade of a felony or a crime of a lesser degree that involves moral turpitude, unprofessional or dishonorable conduct that is likely to deceive or defraud the public, and violation of laws connected with his practice of medicine.

**Guinn, Edward William, M.D., Fort Worth, TX, Lic. #C5701**

An Agreed Order was entered 5-10-97 assessing an administrative penalty in the amount of $1,000.00. Action due to violation of Board rules.

**Jones, James Hollis, M.D., Denton, TX, Lic. #C2516**

# EXHIBIT   3

# WESTERN MEDICAL EVALUATORS, INC.

## Business Entity Information

| | | | |
|---|---|---|---|
| Status: | **Dissolved** | File Date: | **6/09/2004** |
| Type: | **Domestic Corporation** | Entity Number: | **C15450-2004** |
| Qualifying State: | **NV** | List of Officers Due: | **6/30/2009** |
| Managed By: | | Expiration Date: | |
| NV Business ID: | **NV20041499359** | Business License Exp: | |

## Registered Agent Information

| | | | |
|---|---|---|---|
| Name: | **NEVADA CORPORATE HEADQUARTERS, INC** | Address 1: | **101 CONVENTION CENTER DR SUITE 700** |
| Address 2: | | City: | **LAS VEGAS** |
| State: | **NV** | Zip Code: | **89109** |
| Phone: | | Fax: | |
| Mailing Address 1: | **P O BOX 27740** | Mailing Address 2: | |
| Mailing City: | **LAS VEGAS** | Mailing State: | **NV** |
| Mailing Zip Code: | **89126** | | |
| Agent Type: | **Commercial Registered Agent - Corporation** | | |
| Jurisdiction: | **NEVADA** | Status: | **Active** |

## Financial Information

| | | | |
|---|---|---|---|
| No Par Share Count: | **0** | Capital Amount: | **$ 25,000.00** |
| Par Share Count: | **25,000,000.00** | Par Share Value: | **$ 0.001** |

## Officers                                              Include Inactive Officers

**President - BARBARA DOUGLAS**

| | | | |
|---|---|---|---|
| Address 1: | **PO BOX 27740** | Address 2: | |
| City: | **LAS VEGAS** | State: | **NV** |
| Zip Code: | **89126** | Country: | |
| Status: | **Active** | Email: | |

**Secretary - BARBARA DOUGLAS**

| | | | |
|---|---|---|---|
| Address 1: | **PO BOX 27740** | Address 2: | |
| City: | **LAS VEGAS** | State: | **NV** |
| Zip Code: | **89126** | Country: | |
| Status: | **Active** | Email: | |

**Treasurer - BARBARA DOUGLAS**

| | | | |
|---|---|---|---|
| Address 1: | **PO BOX 27740** | Address 2: | |
| City: | **LAS VEGAS** | State: | **NV** |
| Zip Code: | **89126** | Country: | |
| Status: | **Active** | Email: | |

**Director - BARBARA DOUGLAS**

| | | | |
|---|---|---|---|
| Address 1: | **PO BOX 27740** | Address 2: | |
| City: | **LAS VEGAS** | State: | **NV** |
| Zip Code: | **89126** | Country: | |
| Status: | **Active** | Email: | |

## Actions\Amendments

| Action Type: | Articles of Incorporation | | |
|---|---|---|---|
| Document Number: | C15450-2004-001 | # of Pages: | 6 |
| File Date: | 6/09/2004 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Initial List | | |
| Document Number: | C15450-2004-002 | # of Pages: | 1 |
| File Date: | 7/08/2004 | Effective Date: | |
| List of Officers for 2004 to 2005 | | | |
| Action Type: | Annual List | | |
| Document Number: | 20050310254-52 | # of Pages: | 1 |
| File Date: | 7/13/2005 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20060426423-79 | # of Pages: | 1 |
| File Date: | 6/30/2006 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20070519927-52 | # of Pages: | 1 |
| File Date: | 7/27/2007 | Effective Date: | |
| (No notes for this action) | | | |
| Action Type: | Annual List | | |
| Document Number: | 20080446045-53 | # of Pages: | 1 |
| File Date: | 6/30/2008 | Effective Date: | |
| 08-09 | | | |
| Action Type: | Dissolution | | |
| Document Number: | 20090439849-48 | # of Pages: | 1 |
| File Date: | 5/22/2009 | Effective Date: | |
| (No notes for this action) | | | |

# EXHIBIT   4



# PUBLIC VERIFICATION / PHYSICIAN PROFILE

## PHYSICIAN

**NAME:** HOWARD  THOMAS  DOUGLAS  III  MD     **DATE:** 09/06/2011

---

**THE INFORMATION IN THIS BOX HAS BEEN VERIFIED
BY THE TEXAS MEDICAL BOARD**

**Date of Birth:** 1949
**License Number:** F1511 Full Medical License
**Issuance Date:** 08/27/1978
**Expiration Date of Physician's Annual Registration Permit:** 02/28/2013

**Registration Status:** ACTIVE                **Registration Date:** 07/29/1999
**Disciplinary Status:** SEE PREVIOUS ORDER    **Disciplinary Date:** 10/08/2007
**Licensure Status:** NONE                     **Licensure Date:** NONE

**Medical School of Graduation:**
At the time of licensure, TMB verified the physician's graduation from medical school as follows:
UNIV OF TEXAS MED BRANCH, GALVESTON

**Medical School Graduation Year:** 1978


**TMB Actions and License Restrictions**
The Texas Medical Board has taken the following board actions against this physician. (Also
included are any formal complaints filed by TMB that are currently pending before the State Office of
Administrative Hearings).

View the documents containing action taken by the Board against this individual.

View Order(s)     Get Adobe Reader

**Action Date:**  10/08/2007
**Description:**  STATUS CLEARED 10/08/2007

**Action Date:**  08/24/2007

**Description:**  ON AUGUST 24, 2007, THE BOARD AND DR. DOUGLAS ENTERED INTO AN
ADMINISTRATIVE AGREED ORDER ASSESSING AN ADMINISTRATIVE PENALTY OF $500.
THE ACTION WAS BASED ON DR. DOUGLAS'S FAILURE TO TIMELY RELEASE BILLING AND
MEDICAL RECORDS IN RESPONSE TO A PROPERLY EXECUTED RELEASE FROM A

---

PATIENT'S AUTHORIZED REPRESENTATIVE.

**Action Date:** 08/26/2006
**Description:** STATUS CLEARED 08/26/2006

**Action Date:** 08/25/2006
**Description:** ON AUGUST 25, 2006, THE BOARD AND DR. DOUGLAS ENTERED INTO AN ADMINISTRATIVE AGREED ORDER ASSESSING AN ADMINISTRATIVE PENALTY OF $500. THE ACTION WAS BASED ON ALLEGATIONS THAT DR. DOUGLAS FAILED TO PROVIDE PROPERLY REQUESTED MEDICAL RECORDS WITHIN 15 BUSINESS DAYS.

**Action Date:** 05/27/1999
**Description:** 5/27/99- SUSPENSION OF LICENSE LIFTED AND LICENSE IS FREE AND CLEAR OF ANY PREVIOUS RESTRICTIONS.

**Action Date:** 05/14/1999
**Description:** 5-14-99: BOARD ORDER ENTERED DENYING PHYSICIAN'S REQUEST TO HAVE HIS TEXAS LICENSE REINSTATED.

**Action Date:** 10/24/1998
**Description:** 10-24-98 AN ORDER WAS ENTERED DENYING TERMINATION REQUEST HOWEVER IT WAS MODIFIED AS FOLLOW: PARAGRAPH 1(C) ON PAGE 7 IS DELETED, PARAGRAPH 1(E) IS MODIFIED TO INCLUDE THE PASSING OF THE AMERICAN BOARD OF EMERGENCY ROOM MEDICINE CERTIFICATION EXAM AS AN ALTERNATIVE, PARAGRAPH 1 (K) IS MODIFIED TO REDUCE THE AMOUNT OF THE ADMINISTRATIVE PENALTY TO $5,000, AND PARAGRAPH 2 ON PAGE 8 AND 9 ARE DELETED.

**Action Date:** 07/03/1997
**Description:** MOTION FOR REHEARING DENIED BY BOARD 7/3/97.

**Action Date:** 06/16/1997
**Description:** MOTION FOR REHEARING FILED 6/16/97.

**Action Date:** 05/12/1997
**Description:** 5/12/97- ORDER ENTERED SUSPENDING LICENSE UNTIL DR. DOUGLAS SATISFIES CERTAIN TERMS AND CONDITIONS AS OUTLINED IN ORDER. ORDER NOT FINAL UNTIL ALL APPEALS HAVE BEEN EXHAUSTED

## Investigations by TMB of Medical Malpractice

Section 164.201 of the Act requires that: the board review information relating to a physician against whom three or more malpractice claims have been reported within a five year period. Based on these reviews, the following investigations were conducted with the listed resolutions.

NONE

## Status History

Status history contains entries for any updates to the individual's registration, licensure or disciplinary status types (beginning with 1/1/78, when the board's records were first automated). Entries are in reverse chronological order; new entries of each type supersede the previous entry of

that same type. These records do not display status type. Should you have any questions, please contact our Customer Information Center at 512-305-7030 or verifcic@tmb.state.tx.us

**Status Code:** CL                    **Effective Date:** 10/08/2007
**Description:** SEE PREVIOUS ORDER

**Status Code:** RB                    **Effective Date:** 08/24/2007
**Description:** UNDER BOARD ORDER

**Status Code:** CL                    **Effective Date:** 08/26/2006
**Description:** SEE PREVIOUS ORDER

**Status Code:** RB                    **Effective Date:** 08/25/2006
**Description:** UNDER BOARD ORDER

**Status Code:** AC                    **Effective Date:** 07/29/1999
**Description:** ACTIVE

**Status Code:** CL                    **Effective Date:** 05/27/1999
**Description:** SEE PREVIOUS ORDER

**Status Code:** DQ                    **Effective Date:** 03/30/1999
**Description:** DELINQUENT-NON PAYMENT

**Status Code:** AC                    **Effective Date:** 04/14/1998
**Description:** ACTIVE

**Status Code:** DQ                    **Effective Date:** 03/30/1998
**Description:** DELINQUENT-NON PAYMENT

**Status Code:** SB                    **Effective Date:** 07/03/1997
**Description:** SUSPENDED BY BOARD

**Status Code:** SBA                   **Effective Date:** 07/03/1997
**Description:** SUSPENDED, ACTIVE

**Status Code:** AC                    **Effective Date:** 04/18/1997
**Description:** ACTIVE

**Status Code:** DQ                    **Effective Date:** 03/30/1997
**Description:** DELINQUENT-NON PAYMENT

**Status Code:** FB                    **Effective Date:** 10/03/1995
**Description:** FILED BY BOARD

**Status Code:** FB                    **Effective Date:** 10/03/1995
**Description:** FILED BY BOARD

# EXHIBIT   5

Ripoff Report | Scams, reviews, complaints, lawsuits and frauds. File a report, post your review. Consumers educating consumers.

By consumers, for consumers...

Don't let them get away with it.® Let the truth be known!

Home    Help

File a        Update      Latest      Consumer     Consumers        Legal              Corporate
Report       Report      Reports     Resources    Say Thank You    Directory          Advocacy

Register | Login

SEARCH COMPANY OR REPORT »            Search
Use Advanced Search Latest Reports

**File a Report Here!**

Where it **counts!** Permanently!
Other complaint sites remove reports for money.
We never do, at great expense & threat. Consumer advocate
ED Magedson protects your First Amendment rights. Read more...

**Report: #216409**

# Complaint review: Western Medical Evaluators

**Reported By:** (Denton Texas )

## Western Medical Evaluators, ripoff to all employees as well as worker's comp patients Denton, TX Denton Texas

**Western Medical Evaluators**
531 Londonderry Ln # 531
Denton Texas 76205
U.S.A.
Phone: 940-595-1820

**Category:** Collection Agencies

**Submitted:** Wednesday, October 18, 2006
Last posting: Monday, October 30, 2006

  Share



**Report - Rebuttal - Arbitrate**

| 4 | 0 | 4 |
|---|---|---|
| Author | Consumer | Employee |

**Respond to this report!**
File a Rebuttal

**Also a victim?**
File a Report

**Arbitrate**
**Remove Reports?**
No! Better yet!
Arbitrate to set the
record straight!

As a manager with Western Medical Evaluators, Inc. I have come to witness sexual harassment, racism, and fraudulent acts within the company. I have been told that the men are better workers than women and the senior females of the office are not compensated at all for their hard work. The men in the office make more money than others and are handed laptops and their cell phone bills are paid off by the company. They owe all their traveling contracted Doctors money for back exams which have already been paid by the insurance carrier. Western Medical Evaluators, Inc. is being sued by a number of their Dr's for this very reason. The Doctors who work for this company are told they get paid more money for the exam if the patient has reached Maximum Medical Improvement so the Dr's place most of their patients that way. Western Medical pays their in office employees hardly any money for the hard work they do. They also put a tremendous amount of work on these employees causing them to get overwelmed with their job and having unfinished tasks.

anonimous
Denton, Texas
U.S.A.

This report was posted on Ripoff Report on 10/18/2006 10:06:40 AM and is a permanent record located here:
http://www.ripoffreport.com/collection-agencies/western-medical-eval/western-medical-evaluators-ripoff-to.htm.
Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report.

Click Here to read other Ripoff Reports on Western Medical Evaluators

**Search for additional reports**
If you would like to see more Rip-off Reports on this company/individual, search here:

Western Medical Evaluators            Search   (?) SEARCH TIPS

**Report & Rebuttal**





# EXHIBIT   6

# CONSULTING AGREEMENT

This Consulting Agreement (this "Agreement") is made and entered into as of March 21, 2007, by and between American Airlines, Inc. a Delaware corporation (hereinafter referred to as the "Company") and Western Medical Evaluators, Inc., a Nevada corporation and consulting company with offices located in Denton, Texas (hereinafter referred to as the "Consulting Company").

## RECITALS

WHEREAS, Consulting Company has certain experience and contacts pertaining to physician recruiting and credentialing, medical report creation and editing, scheduling medical specialists to do a variety of exams, including IMEs, peer reviews, independent medical reviews, and long term disability evaluations for a variety of clients including employers, insurance carriers, third party administrators, municipalities, county state and federal governmental units and attorneys, to name a few and,

WHEREAS, the Company wishes to engage the services of the Consulting Company as an advisor and technical resource to provide the Company similar services on a non-exclusive basis.

NOW, THEREFORE, in consideration of the mutual promises herein contained, the parties hereto hereby agree as follows:

1.     CONSULTING SERVICES

Consulting Company shall provide such services as noted above which include the expert services of board certified medical doctors in all endeavors and specialties of medicine, to include Senior Aviation Medical Examiners, as well as:

| | |
|---|---|
| Acupuncture | General, Vascular & Thoracic Surgery |
| Allergy/Immunology | Hand Surgery |
| Anesthesiology | Hematology/Oncology |
| Audiology | Heart Transplant |
| Bariatric Surgery | Infectious Diseases |
| Bone Marrow Transplantation | Internal Medicine |
| Cardiology | Interventional Cardiology |
| Cardiovascular & Thoracic Surgery | Kidney Transplant |
| Chiropractic | Liver Pancreas Transplant |
| Dentistry | Neonatology |
| Dermatology/Dermatopathology | Nephrology |
| Diagnostic Radiology | Neurological Surgery |
| Electrophysiology Cardiology | Neurology |
| Emergency Medicine | Obstetrics/Gynecology |
| Endocrinology | Ophthalmology |
| Forensic Medicine | Oral & Maxillofacial Surgery |
| Gastroenterology | Organ Transplant |
| General Surgery | Orthopedic Surgery |

AA-000183

2

| | |
|---|---|
| Orthotics/Prosthetics | Plastic Surgery |
| Otolaryngology | Podiatry |
| Pain Management | Prosthodontics |
| Pediatric Cardiology | Psychiatry |
| Pediatric Endrocrinology | Psychology |
| Pediatric Gastroenterology | Pulmonary Medicine |
| Pediatric Nephrology | Radiation Oncology |
| Pediatric Neurology | Radiology |
| Pediatric Ophthalmology | Rheumatology |
| Pediatrics | Sleep Disorders |
| Pediatric Surgery | Speech & Language Pathology |
| Perinatology | Toxicology |
| Physical Medicine & Rehabilitation | Transplant Surgery |
| Physical Therapy | Urology |

Specialists will be AADEP certified or other disability certification as approved by Company.

2.    TERM OF AGREEMENT

This Agreement shall be in full force and effect commencing upon the date hereof and concluding at the close of business on the same date in twelve months ("Termination Date"). As of the Termination Date, this Agreement shall automatically renew on a month-to-month basis unless either party elects to terminate this Agreement by giving 30 days rior written notice. Either party hereto shall have the right to terminate this Agreement without notice in the event of the bankruptcy, insolvency, or assignment for the benefit of creditors of the other party. Consulting Company shall have the right to terminate this Agreement if Company fails to comply with any of the material terms of this Agreement, including without limitation its responsibilities for fees as set forth in this Agreement, and such failure continues un-remedied for a period of thirty (30) days after written notice to the Company by Consulting Company. The Company shall have the right to terminate this Agreement upon delivery to Consulting Company of written notice setting forth with facts comprising a material breach of this Agreement by Consulting Company. Consulting Company shall have thirty (30) days to remedy such breach.

3.    TIME DEVOTED BY CONSULTING COMPANY

It is anticipated that the Consulting Company shall spend as much time as deemed reasonably necessary by the Consulting Company in order to perform the obligations of Consulting Company hereunder, recognizing the Company's obligation to satisfy Department of Labor regulations concerning the timely handing of benefit claims.

4.    PLACE WHERE SERVICES WILL BE PERFORMED

The Consulting Company will perform most services in accordance with this greement at Consulting Company's offices. In addition, the Consulting Company will perform services on the telephone and at such other place(s) as necessary to perform these services in accordance with this Agreement.

3

**5.     DOCUMENTS THAT COMPANY SHALL PROVIDE THE CONSULTING COMPANY**

- All medical records pertaining to each specific case.
- Copy of the Disability Program.
- All modifications or supplements to the Disability Program.

**6.     COMPENSATION TO CONSULTING COMPANY**

a.     MEDICAL EXAM SERVICES.  Company will compensate Consulting Company according to the fee schedule in Exhibit "A."  Consulting Company will use its best efforts to provide fixed-fee exams.  Company understands that this may not be possible in all cases and that Consulting Company will notify Company of price range in those cases.

b.     MEDICAL TESTIMONY.  Company agrees to reasonably compensate Consulting Company for medical testimony including depositions and in court appearances by the specialist.  Company understands that such testimony is outside the initial medical review and will bill as such.  Company further understands that such testimony fees vary by specialist.

c.     BILLING TERMS.  The Consulting Company will issue a detailed and verifiable invoice for the total cost of consulting services once the final report has been created and provided to the Company.  The Company agrees that medical testimony is billed separately from medical services.  The Consulting Company will receive payment within thirty (30) days of Company's receipt of the invoice.

**7.     INDEPENDENT CONTRACTOR**

Both Company and the Consulting Company agree that the Consulting Company will act as an independent contractor in the performance of its duties under this Agreement. Nothing contained in this Agreement shall be construed to imply that Consulting Company, or any employee, agent or other authorized representative of Consulting Company, is a partner, joint venturer, agent, officer or employee of Company.

**8.     CONFIDENTIAL INFORMATION**

The Consulting Company and the Company acknowledge that each will have access to certain proprietary information regarding the business operations of the other and agree to keep all such information secret and confidential and not to use or disclose any such information to any individual or organization without the non-disclosing party prior written consent; provided the same may be shared with its employees and agents involved in performing the terms of this Agreement on an as need to know basis. It is hereby agreed that from time to time Consulting Company and the Company may designate certain disclosed information as confidential for purposes of this Agreement. Consulting Company hereby designates its physician network and/or any brokerage operations identified by Consulting Company to Company as Consulting Company's confidential information. Company hereby designates all personal and medical information related to any case

AA-000185

4

submitted to Consulting Company as confidential information.  The parties shall use the same standard of care used to protect its own proprietary and confidential information in protecting that of the other party hereto.

9.    INDEMNIFICATION

The Company and the Consulting Company hereby agree to indemnify and hold each other harmless from any and all liabilities incurred through the normal course of doing business.  Specifically, the Consulting Company will be held harmless for any and all medical opinions, disability opinions, aviation related medicine opinions, and all such recommendations that may be produced by the medical specialists that are contracted with Western Medical Evaluators, Inc. for producing such medical reports as are directed by the Company.  Furthermore, the Company agrees to reimburse Consulting Company for any reasonable legal or other expenses incurred by Consulting Company in connection with investigating or defending any action, proceeding, investigation, or claim in connection herewith.

Notwithstanding the foregoing,  Consulting Company shall indemnify, defend and hold harmless Company and its affiliates/associates, and each of their officers, shareholders, directors, employees, agents (collectively, the **"American Indemnified Parties"**), from and against any and all third party claims, demands, proceedings, suits and actions, including any related liabilities, obligations, losses, damages, fines, judgments, settlements, expenses (including reasonable attorneys' and accountants' fees and disbursements) and costs (collectively, **"Claims"**), incurred by, borne by or asserted against any of the American Indemnified Parties to the extent such Claims in any way relate to, arise out of or result from: (i) any intentional or willful conduct or negligence of any employee or subcontractor of the Consulting Company, (ii) breach of any representation, warranty or covenant of Consulting Company contained herein,

In addition and notwithstanding anything herein to the contrary, Company shall indemnify, defend and hold harmless Consulting Company and its affiliates/associates and licensees, and each of their officers, shareholders, directors, employees and agents (collectively, the **"Consulting Company Indemnified Parties"**), from and against any and all Claims incurred by, borne by or asserted against any of the Consulting Company Indemnified Parties to the extent such Claims in any way relate to, arise out of or result from: (i) any intentional or willful conduct or negligence of any employee or subcontractor of Company, or (ii) breach of any representation, covenant or warranty of contained herein.

The indemnity obligations of the parties under this paragraph 9 shall be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of the Company, the Consulting Company, and any other such persons or entities mentioned hereinabove.

10.    COVENANTS OF CONSULTING COMPANY

Consulting Company covenants and agrees with the Company that, in performing consulting services Consulting Company will not publish, circulate or otherwise use any materials or updates other than materials provided by or otherwise approved by the Company.  Consulting Company also covenants and agrees that medical reports produced

AA-000186

5

by Consulting Company are confidential and will be distributed only to specialists necessary to perform its obligations under this Agreement and Company.

21.   MISCELLANEOUS

(a) ATTORNEYS' FEES.  If either party files any action or brings any proceeding against the other arising out of this Agreement, then the prevailing party shall be entitled to reasonable attorneys' fees.

(b) WAIVER.  No waiver by a party of any provision of this Agreement shall be considered a waiver of any other provision or any subsequent breach of the same or any other provision. The exercise by a party of any remedy provided in this Agreement or at law shall not prevent the exercise by that party of any other remedy provided in this Agreement or at law.

(c) ASSIGNMENT.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and no assignment shall be allowed without first obtaining the written consent of the non-assigning party.

(d) SEVERABILITY.  If any condition or covenant herein contained is held to be invalid or void by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way effect the other covenants and conditions contained herein.

(e) AMENDMENT.  This Agreement may be amended only by a written agreement executed by all parties hereto.

(f) HEADINGS.  Titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.  No provision in this Agreement is to be interpreted for or against either party because that party or his legal representative drafted such provision.

(g) NOTICE. All written notices, demands, or requests of any kind, which either party may be required or may desire to serve on the other in connection with this Agreement, must be served by registered or certified mail, with postage prepaid and return receipt requested. In lieu of mailing, either party may cause delivery of such notice, demands and requests to be made by personal service facsimile transmission, provided that acknowledgment of receipt is made. Notice shall be deemed given upon personal delivery or receipt of facsimile transmission, or two (2) days after mailing. All such notices, demands, and requests shall be delivered as follows:

> If to the Company: American Airlines
> P.O. Box 619616
> MD5134-HDQ1
> DFW Airport, TX 75261-9616
> Fax: 817.967.6335

AA-000187

6

**If to Consulting Company: Western Medical Evaluators, Inc**
**P.O. Box 50743**
**Denton, TX 76210**
**Fax: 940.565.1840**

(h) ENTIRE AGREEMENT. This Agreement, including any Exhibits or Schedules attached hereto, contains all of the representations, warranties, and the entire understanding and agreement between the parties. Correspondence, memoranda, or agreements, whether written or oral, originating before the date of this Agreement are replaced in total by this Agreement unless otherwise especially stated.

(i) COUNTERPARTS; FACSIMILE SIGNATURES. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Parties agree that facsimile signatures of this Agreement shall be deemed a valid and binding execution of this Agreement.

(j) GOVERNING LAW AND VENUE. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. In any legal action involving this Agreement or the parties' relationship, the parties agree that the exclusive venue for any lawsuit shall be in the state or federal court located within the County of Dallas. The parties agree to submit to the personal jurisdiction of the state and federal courts located within Dallas County, Texas.

(k) NO ANNOUNCEMENT OF TRANSACTION. Neither party hereto, without the prior written approval of the other party, will make any public or private announcement of the terms of this Agreement or of the signing of the same.

IN WITNESS WHEREOF, the parties hereto have placed their signatures hereon on the day and year first above written.

"COMPANY"                          "CONSULTING COMPANY"

American Airlines Inc.             WESTERN MEDICAL EVALUATORS, INC.
A CORPORATION                      A Consulting Company

                                   /s/ Barbara Douglas
                                   ------------------------------
BY: _____        BY: _____
ITS: MD Benefit & Productivity     ITS: President

AA-000188

# EXHIBIT   7

Western Medical Evaluators - Denton, TX - Billing Service in Denton, Texas                    Page 1 of 2

Google AdWords | Start with $75 of free advertising on us.

First out at core >

**manta** We do small business

Sign In     New to Manta? Join Free    What is Manta?     Manta SMB View - Free Newsletter for Small Businesses

Search more than 60 million companies

Browse Companies       More Resources
U.S.    Worldwide      Manta Connect      Business Features      Using Manta

U.S. > Denton, TX > Professional Services > Accounting, Auditing, and Bookkeeping Services > Billing Service > **Western Medical Evaluators**

Company Profile        Reports        Map        Web Results

# Western Medical Evaluators

531 Londonderry Lane
Denton, TX 76205-5374 map
Dallas, TX Metro Area

**Phone:**    (940) 565-1820

**Website:**   Information not found

**Medical Billing & Coding** Get Certified in Online in Medical Billing & Coding. Find Schools Now!

www.topcareerschools.com/MedBilling

**Medical Billing Services** Complete Medical Billing, PM & EHR Increase Your Bottom Line Today!

www.sunshinemdonline.com

The ads are not affiliated with Western Medical Evaluators

### About Western Medical Evaluators
Is this your company? Claim This Profile

Western Medical Evaluators in Denton, TX is a private company categorized under Billing Service. Current estimates show this company has an annual revenue of $500,000 to $1 million and employs a staff of approximately 5 to 9. Companies like Western Medical Evaluators usually offer: Credit Card Billing Services, Laboratory Billing Services, Advanced Billing Services, American Billing Services and Dme Billing Services.

### Business Categories

Billing Service in Denton, TX

Other Accounting Svcs

View newly formed U.S. businesses

### Company Contacts
Is this your company? Claim This Profile

Barbara Douglas
Owner

Search for more contacts

### Western Medical Evaluators Business Information

| | |
|---|---|
| Location Type | Single Location |
| Annual Sales (Estimated) | $500,000 to $1 million |
| Employees (Estimated) | 5 to 9 |
| SIC Code | 872103, Billing Service |
| NAICS Code | 541219, Other Accounting Svcs |
| Products, Services and Brands | Information not found |

Own this business?
**Edit Company Info**

Company Profile Options

Print this page

Share this page

0        0

Like

Manta Members Connected to this Company

Do you work here?
Add this company to your member profile.

Manta Members Who Viewed This Company Profile

YOU
Sign In or Register to Join Manta

Related Searches

Other companies that match "western medical evaluators"

All U.S. Billing Service

Other Companies

Silent Secretary
Billing Service in Denton, TX

Thomas Brown & Associates Inc
Billing Service in Corinth, TX

Bulldog Billing LLC
Billing Service in Denton, TX

North Texas Bookeeping Service
Billing Service in Denton, TX

Tat Billing Service LLC
Billing Service in Denton, TX

Related Products

Companies in this category usually offer

Jobs in Denton, TX

Ads by Google

**Verizon Phone Deals**
Official Site - Voice Plans & Free Phone Offers At Verizon!
verizonwireless.com

**Small Business VoIP**
Lower your phone bill up to 50% with 8x8 business phone service
www.Business.8x8.com

**Service-now.com Solutions**
Complete service offerings from deployment to optimization
www.FruitionPartners.com

**DIRECTV® Official Site**
Get 50% Off DIRECTV®(1yr) + Access 6,000 Shows & Movies. Free Install!
www.directv.com

**Cheap High Speed Internet**
Connect W/ The Cheapest High Speed Internet In Your Area!
LocalXpress.com

Western Medical Evaluators. Barbara Douglas: Accountant in Denton, TX: Profile | Acco...   Page 1 of 1

Find Accountants | Browse Accountants                                                         login | create free account

Accounting8.com     Dixie Medical Equipment New & Used AEDs, Defibrillators, Vital Signs Monitors & More. Visit www.DixieMed.com
                    Medical Transcriptionist Become a Medical Transcriptionist at home, at your own pace. www.FLMedInst.org
                    Medical Law Suit Pain & Suffering from Your Injury? Talk to a Local Attorney for Free. www.InjuryMedMalpractice.com
                                                                                                              Ads by Google

Find Accountants > Texas Accountants > Denton Accountants > Western Medical Evaluators

**Western Medical Evaluators, Barbara Douglas**
531 Londonderry Ln # 132, Denton, TX 76205

Profile    Photo & Coupon    Map    Customer Reviews    Nearby Accountants

Medical Alert
The Affordable Medical
Alert, Take Advantage
Of Our Discounted
Pricing
MedicalAlert.com

Medicare Advantage
Plans
It is not too late to
switch to
SecureHorizons®.
Contact us today!
AARPMedicarePlans.com/A...

Medical Billing &
Coding
Get Certified in
Medical Billing &
Coding Online. Find
Schools Now!
www.medicarecoding.com

EMR Software -
Quotes
Compare Prices,
Features & Save. Find
the Best Deal and
Save Today!
EMR.buyerzone.com

Medical Billing
Software
97%+ Claim
Acceptance - Easy to
Use Proven Best
Results- Free Web
Demo

Business Profile of Western Medical Evaluators

| | |
|---|---|
| Business Name: | Western Medical Evaluators |
| Contact Person: | Barbara Douglas |
| Title: | Owner |
| Gender: | Female |
| Address: | 531 Londonderry Ln # 132 |
| | Denton, TX 76205 |
| Office Phone: | (940) 565-1820 |
| Office Fax: | - |
| Office Email: | - |
| Web Address: | - |
| Estimated Staff: | 6 |
| Industrial Classification: | 872103 - Billing Service |

Remove Listing    Add Listing

Western Medical Evaluators is located at 531 Londonderry Ln # 132 Denton, TX. Barbara Douglas is the Owner contact person. Please tell them that you find them through Accounting8.com and ask them to update the profile and upload photos!

The Standard Industrial Classification(SIC) of Western Medical Evaluators is 872103 - Billing Service. Accountant, practitioner of accountancy, is the measurement, disclosure or provision of assurance about financial information which assist managers, investors, tax authorities and other decision makers make resource allocation decisions. Legally practicing accountants are CPAs(Certified Public Accountant), CIA(Certified Internal Auditor), CMA(Certified Management Accountant) and ABA(Accredited Business Accountant). We suggest you contact more Accountants nearby before making decisions.

The estimated number of employees at Western Medical Evaluators is 6. The phone number of Western Medical Evaluators is (940) 565-1820. The fax number of Western Medical Evaluators is unavailable. The contact email of Western Medical Evaluators is unavailable. The web address of Western Medical Evaluators is unavailable. Please click the Correct Listing link to update the contact information(contact person, phone number, fax, email address and web address, etc).

This listing has been archived. It will not appear on search result. To add it back to database, please sign up and create a new business profile.

Remove Listing: If you believe this listing should be removed, please click here to remove.
Add Listing: If your or someone else's business is not listed, click here to add

Accounting8.com ©© 2011 | Contact Us | About Us | Privacy Policy | Terms of Use

# **<u>EXHIBIT  8</u>**

# AmericanAirlines®

August 1, 2008

*TRANSMITTED ON AUGUST 1, 2008 VIA FACSIMILE, TO 940-565-1840, WITH ORIGINAL LETTER SENT VIA*
*FEDERAL EXPRESS, #841167570141*

Barbara Douglas
Western Medical Evaluators, Inc
1302    Teasley Lane
Denton, TX 76210



Re:      Notice of Material Breach and Termination of Contract with American Airlines, Inc.

Dear Ms. Douglas:

By letter dated September 18, 2007 (attached), I informed you that the significant delays in claim response time for matters
submitted to Western Medical Evaluators, Inc. ("Western") for review had become problematic, and requested that claim
responses be provided in a timely manner. I further informed you that if Western failed to provide the responses in a timely
manner American was providing Western with its 30-day advance notice of termination of the agreement due to Western's
material breach thereof.

Unfortunately, Western's failure to provide timely claim responses has continued. Over the course of the last 90-120 days,
American has noted a continuing and significant deterioration in the response time for claim appeals submitted to Western.
These ongoing and significant delays continue to be very problematic for AA.

As I reminded you in previous letter,  under the agreement between Western and AA, Western agreed, among other things, to
the following:

> *It is anticipated that the Consulting Company shall spend as much time as deemed reasonably*
> *necessary by the Consulting Company in order to perform the obligations of Consulting Company*
> *hereunder, recognizing the Company's obligation to satisfy Department of Labor regulations*
> *concerning the timely handing of benefit claims.*

Despite this contractual requirement, Western's failure to complete the reviews within a time frame that recognizes the
Company's obligation to satisfy the U.S. Department of Labor's regulations governing claims procedures is continuing, and
that    failure    continues    to    place,    AA    in    jeopardy    if    such    claims    are    challenged.
Should such challenges occur, the Company will be forced to pursue all of its remedies under the agreement, including
remedies under the indemnification and contract termination clauses. The indemnification clause provides:

> *Notwithstanding the foregoing, Consulting Company shall indemnify, defend and hold harmless*
> *Company and its affiliates/associates, and each of their officers, shareholders, directors,*
> *employees, agents (collectively, the "American Indemnified Parties"), from and against any and all*
> *third party claims, demands, proceedings, suits and actions, including any related liabilities,*
> *obligations, losses, damages, fines, judgments, settlements, expenses (including reasonable*
> *attorneys' and accountants' fees and disbursements) and costs (collectively, "Claims"), incurred by,*
> *borne by or asserted against any of the American Indemnified Parties to the extent such Claims in*
> *any way relate to, arise out of or result from: (i) any intentional or willful conduct or negligence of*
> *any employee or subcontractor of the Consulting Company, (ii) breach of any representation,*
> *warranty or covenant of Consulting Company contained herein,*

> *In addition and notwithstanding anything herein to the contrary, Company shall indemnify, defend*
> *and hold harmless Consulting Company and its affiliates/associates and licensees, and each of*
> *their officers, shareholders, directors, employees and agents (collectively, the "Consulting*
> *Company Indemnified Parties"), from and against any and all Claims incurred by, borne by or*
> *asserted against any of the Consulting Company Indemnified Parties to the extent such Claims in*
> *any way relate to, arise out of or result from: (i) any intentional or willful conduct or negligence of*

any employee or subcontractor of Company, or (ii) breach of any representation, covenant or warranty of contained herein.

The indemnity obligations of the parties under this paragraph 9 shall be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of the Company, the Consulting Company, and any other such persons or entities mentioned hereinabove.

AA hereby is providing Western with its 30-day advance notice of termination of the agreement, effective as of August 31, 2008, due to Western's material breach of the Agreement as provided in the following contract provision:

The Company shall have the right to terminate this Agreement upon delivery to Consulting Company of written notice setting forth with facts comprising a material breach of this Agreement by Consulting Company. Consulting Company shall have thirty (30) days to remedy such breach.

By our letter of July 31, 2008, we requested that Western terminate work on the two open appeal cases sent to you in May, 2008, and return these case files to us. By this letter, we also instruct Western to immediately return to us all records/case files AA submitted to you on the following appeal cases:

Kathy Emery, #354954

The records should be returned to AA at the following address:

Deborah L. Jameson
Manager, Benefits Compliance
American Airlines, Inc.
PO Box 619616, MD 5134-HDQ1
Dallas-Ft. Worth Airport, TX 75261-9616

Very truly yours,

AMERICAN AIRLINES, INC.

John Gross,
Senior Attorney

2

# **EXHIBIT   9**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO  08-61106-CIV-SEITZ/O'SULLIVAN

CAPITAL FUNDING SOLUTIONS,
INC , a South Carolina corporation,

      Plaintiff,

vs

WESTERN MEDICAL EVALUATORS,
INC., a Nevada corporation, and
BARBARA DOUGLAS, an individual,
jointly and severally,

      Defendants
_____/

## <u>AFFIDAVIT OF LEIGHANNE GRIFFIN</u>

**BEFORE ME**, the undersigned authority, personally appeared LEIGHANNE GRIFFIN who, after being first duly sworn deposes and says:

1.    My name is Leighanne Griffin and I have personal knowledge of the facts contained within this Statement. I am over the age of eighteen, suffer from no legal incapacity, and I am otherwise *sui juris*.

2.    The statement below is a true statement regarding events that took place while I was working for Barbara Douglas at Western Medical Evaluators, Inc ("Western Medical") located at 1302 Teasley , Denton, Texas.

3.    On 07/17/08, all employees of Western Medical were told by Barbara Douglas that Western Medical was going under new management, and the company was changing names. Mary Ruth West was to be the new CEO of Western Medical and supervisor.

4.    On 07/22/08, Barbara Douglas walked in to Western Medical and stated she is taking back ownership of Western Medical and demanded all employees out of the building.



PAGE  17
012/019
Reception *
BACK N MAIL
9494949149
07/31/2008 16:09
07/31/2008 17:06 IFAX

Mary Ruth West stated to all employees should go to Texas Workforce and file for unemployment. Barbara Douglas then came outside and stated she would like all employees to come back the next day to work. One employee asked her "Will we get paid on payday?" Barbara Douglas stated she was not sure. The employee then asked "When will we get paid?" Barbara Douglas stated again she was not sure. All employees then stated to her we can not work for a company that can not pay us.

5.    On 07/23/08, all employees that did not stay with Western Medical went to Texas Workforce and filed for unemployment. We all decided then since Texas Workforce was right next to Western Medical, we would get our personal belongings. We walked into Western Medical and Dustin, Computer Tech for Western Medical, stated we needed to stop and we could not get out personal belongings without authority. Dustin is not an employee of Western Medical and never has been, so we did not listen to him. We gathered our personal belongings and started walking to our cars. We heard Dustin calling the police as we were walking out. When we got to our cars, the police pulled up behind us. We explained to them what we were doing and let them go through our personal belongings. Dustin stated to the police that two of the former employees walked out with legal documents. The police went through both of their cars and personal belongings and did not find any legal documents.

6.    Barbara Douglas then came in and signed a no trespassing order against all former employees that walked in Western Medical on 07/23/08. A couple hours later I was told by a former employee of Western Medical that Barbara Douglas stated to him on 07/22/08 that she fired me and another former employee for being on drugs and fired all employees that walked out with Mary Ruth West. These allegations were totally false.

7.    On 07/23/08, Barbara Douglas called the second employee she had stated she fired because he was on drugs. She asked this employee "Are you on your way to work?" He stated to her he was on his way, but was running late. If she "fired him" for being on drugs the

day before, why was she calling him to see if he is working the next day? This former employee and I never had this conversation with Barbara Douglas nor was there ever a drug test taken

8.     Barbara Douglas has asked all her employees to do illegal things in their daily jobs. She has asked the technicians that work with the doctors, to perform tests that were not ordered by the doctors. I know this because one of the technicians is my boyfriend, Michael Douglas  She jeopardized the doctor's medical license. She also bills the FCEs performed by the technicians for longer than what they really take. I have asked each technician how long an FCE takes them and they all have stated anywhere from 15-30 minutes. Barbara Douglas was billing for 4 hours knowing how long it took to perform an FCE by our technicians. Barbara Douglas also billed the Designated Doctor reports for more than they were suppose to be billed.

9.     In June 2008, she told the AR Dept to bill ALL reports under Western Medical. She had been factoring with a company named Capital Funding Solutions, Inc ("Capital Funding") and all bills were supposed to be billed in their name. Once Capital Funding noticed all bills where billed under Western Medical, Greg Curley contacted Barbara Douglas. Barbara Douglas then told the AR Dept to re-bill under CFS. This is illegal and the AR Dept automatically knew this. They were not comfortable with this, but their supervisor was telling them to do this.

10.    I moved to the Report Dept in the beginning of June 2008. I told Mary Ruth West that I would not bill all the FCE ordered by Barbara Douglas and I would only send the FCE ordered by the doctors  Mary Ruth West stated that was fine and she thought Barbara had stopped this. I was not aware at the time that billing for an FCE for 4 hours was not correct. Once Dr. Jerry Franz told me this was incorrect, I started billing the FCEs with the correct time. I was also told, by Dr Jerry Franz, that EVERY doctor had to approve their report before they are sent out. When I mentioned this to Barbara Douglas, she stated she was my supervisor and what she says goes. She also stated if a doctor does not respond to send the report anyways.

Former Report Dept employees have told me that Barbara Douglas would complete the doctor's reports if she did not want to wait on them. She also answered Letter of Clarification for doctors for the same reason, not wanting to wait for the doctor to answer.

11.  I had been an employee for Western Medical for a year and 8 months. When I started with this company, everything seemed normal, but once I started asking questions regarding rules and regulations, Barbara Douglas makes her own rules and regulations. I have done scheduling, reports, and a lot of other duties for Western Medical and never was giving the actual rules and regulations bonded by Texas Dept of Insurance. Once we contacted Texas Dept of Insurance and asked them the rules, Barbara Douglas stated she knew the rules and regulations and what she was doing was fine. She also stated she was our supervisor and what she said goes We have brought many conflicts regarding her rules compared to TDI's actual rules and regulations and she again states she knows the rules and regulations, and has spoken to TDI regarding the rules, and we need to still listen to her.

I, Leighanne Griffin, do swear under penalty of perjury that I have read the above Statement that I know its contents, and that to my knowledge and belief, such contents are true.

_____
LEIGHANNE GRIFFIN

**SWORN TO AND SUBSCRIBED** before me this 31ˢᵗ day of **July**, 2008 by LEIGHANNE GRIFFIN, who is _____ (a) personally known to me, or __✓__ (b) who has produced _TEXAS DRIVER'S LICENSE_ as valid identification.

_____
NOTARY PUBLIC, STATE OF TEXAS AT LARGE

My Commission Expires;
_APRIL 26, 2011_

[Printed Name of Notary]

KIMBERLY A CASS
My Commission Expires
April 26, 2011

# EXHIBIT   10

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61106-CIV-SEITZ/O'SULLIVAN

CAPITAL FUNDING SOLUTIONS,
INC., a South Carolina corporation,

      Plaintiff,

vs.

WESTERN MEDICAL EVALUATORS,
INC., a Nevada corporation, and
BARBARA DOUGLAS, an individual,
jointly and severally,

      Defendants.

_____/

### <u>AFFIDAVIT OF MARY RUTH WEST</u>

**BEFORE ME,** the undersigned authority, personally appeared MARY RUTH
WEST who, after being first duly sworn deposes and says:

1     My name is Mary Ruth West and I have personal knowledge of the facts
contained within this Statement. I am over the age of eighteen, suffer from no legal
incapacity, and I am otherwise *sui juris*.

2.    The statement below is a true statement regarding events that took place
while I was working for Barbara Douglas at Western Medical Evaluators, Inc. located at
1302 Teasley , Denton, Texas.

3    I was hired in April of 2007 as Administrated Assistant for Barbara Douglas,
the principal of Western Medical Evaluators, Inc. (Western Medical"). At the time of my
hiring Ms. Douglas and her father, Tom Douglas appeared to be running the company,
with Barbara Douglas as CEO and Tom Douglas as Medical Director. The company



**EXHIBIT**

"4"

PAGE 02
@002/018
Reception
PACK N MAIL
9494884145
16:09   07/31/2008
07/31/2008 17:09 IFAX

business was to provide doctors to perform exams for the Worker's Compensation Division of Texas Department of Insurance.

4.     Cases in dispute would be assigned to a Designated Doctor certified with the State who would perform an exam that would determine the claimant's ability to return to work or the need for future treatment. These exams affect the claimant's benefits to a large degree. Western Medical had a number of doctors under contract to do these exams and in return for providing the support of overseeing and administering the process that these exams were scheduled and when completed the reports from the doctor being submitted to all the proper parties and billed to the insurance company, Western Medical was paid certain percentage fee of the exam by each doctor.

5.     At the time of my employment Western Medical had numerous lawsuits pending from doctors who had worked for Western Medical in the past and who had not been paid for their services. Dealing with these lawsuits was my first exposure to how the business should work and also some of the internal problems within Western Medical.

6.     The doctors, by terms of their contracts were supposed to receive payment for exams completed when payment was received from the various insurance carriers. These exams are pre-approved by the insurance companies and must be paid within 45 days of payments being received. The only reason they are ever denied is when they are not filed timely or they are coded incorrectly and have to be resubmitted.

7.     Both of these issues are the responsibility of Western Medical in their service to the doctors. I soon learned that Western Medical had a history of not paying their doctors and thus the doctors would usually move to other companies. Western Medical also had also experienced numerous problems with employees and had a startling turn over in their office help.

8.     The reason for both of these factors became clear as I continued my work with Western Medical. Both of the Douglases had poor management skills with their employees, but the primary reason for these problems was that they did not follow any rules or procedures regarding their business.

9     Shortly after my employment started, a problem arose with the factoring company Western Medical was using to fund money in advance on the exams that the doctors performed. The company was the Plaintiff, New Capital Funding, Inc. ("New Capital Funding").

10.     Western Medical's bookkeeping process, which was handled by Teresa Douglas, the mother of Barbara and ex-wife of Tom Douglas. To my knowledge only Teresa and Barbara Douglas ever had access to any bookkeeping records or phases of the procedure and no employee had any contact with monies received except Barbara Douglas and Tom Douglas

11.     There were many arguments between Tom Douglas and Barbara Douglas regarding money - him wanting it was mostly the theme of these arguments. Doctors currently working at that time were calling on a regular basis wanting to know why they were not being paid and several of them in that time period left Western Medical for other companies.

12.     The factor company they were using New Capital Funding in Dallas, Texas was getting very frustrated with Western Medical so the Douglas' began to look for a new source of funds. They found Capital Funding Solutions, Inc. ("Capital Funding").

13.     In June of 2007, Capital Funding purchased the invoices remaining with New Capital Funding. In or around November 2007 the personal problems between Barbara Douglas and her father had become difficult to the point the company was having difficulty operating. At that time Tom Douglas moved into another office across

town and Barbara Douglas removed him from the staff of Western Medical. The rest of the employees, including myself, were put in the position of "damage control" not only with the doctors but also with Texas Department of Insurance due to previous problems such as late filing of reports and other rules not followed by Western Medical.

14.     By December of 2007, Barbara Douglas separated her business from Tom Douglas and Mr. Douglas formed his own company within the industry called North Texas Medical Evaluators. Western Medical Evaluators retained the factoring agreement with Capital Funding and continued to factor and receive funds from Capital Funding.

15.     In January, 2008, a plan was put into place to start phasing out the need to factor. Barbara Douglas made the decision to start factoring only certain insurance claims. In order to factor and receive funds from Capital Funding Solutions she had to bill the insurance companies in the factoring company's name. In order to receive funds directly from the insurance company it would be necessary to bill the insurance company in Western Medical's name.

16.     Barbara Douglas was the sole individual who gave all the directions on how these billings were to be handled and Barbara Douglas alone prepared all the factoring reports to Capital Funding. Barbara Douglas instructed the billing department to send invoices to be paid to Western Medical and then she would create false bills showing Capital Funding as the payee and would then submit these bills to Capital Funding for factoring and receive funds on them.

17.     Since all the monies were actually billed in Western Medical's name, Capital Funding Solutions had no way to actually collect on the money they had funded. Other problems arose when Capital Funding discovered in an audit request that several insurance bills had been created and submitted to them for funding that were in fact false bills created on patients that had not even attended exams that they were scheduled for.

18.   These bills were not submitted to any insurance company for payment but were used for the sole purpose to secure factoring monies from Capital Funding.

19.   As these fraudulent activities came to light, the staff was told by Barbara Douglas to say that these were clerical errors and that the staff should not be concerned about them.  When Greg Curley came to Western Medical's offices for a meeting with Barbara Douglas regarding some of the irregularities he was discovering, she told him that a former employee had made the mistake and had been fired over it. This was simply not true, and Barbara Douglas knew it was not true when she said it.

20.   After Mr. Curley had his meeting with Barbara Douglas, she told me personally what she had done in order to obtain funds.  We discussed a solution and she was in agreement that she would work out a plan with him to repay the funds that were owed to Capital Funding and that we would address some other problems within the company in an attempt to make it a credible operation.

21.   Mr. Curley presented her with some documents to sign to assure everyone that this would be handled correctly and that all future factoring would be clean and correct   Barbara Douglas was leaving on vacation, and did not sign and return the documents requested.  In part those documents consisted of an acknowledgment of what she had done and a commitment to maintain the business in a way that would allow this problem to be worked out.  The documents included a date for return in order for Capital Funding not to proceed with legal action against Western Medical and Barbara Douglas.

22.   Part of that agreement was a payment schedule plus an agreement that would allow Capital Funding to appoint someone to oversee this business if were any further concerns as to mismanagement of funds.  Barbara Douglas did not return these forms by the requested date but did sign and return them to Capital Funding during the

first week of July. She personally brought them to me to read and offer advice on. I believe she also contacted and spoke with an attorney.

23.    She was short of funds at this time and could not pay current bills or pay doctors on funds she had already collected. She stated to me at that time that she would go "belly up" by the end of the week unless Capital Funding would provide more funds. She then signed all the papers which consisted of a promissory note as well as other items. I personally witnessed the signing of these papers. She returned them to Mr. Curley and then produced another factor schedule showing billing done in Capital Funding's name.

24.    At that time I truly believed the factor schedule was clean. The next day I questioned the person in the billing department and was told that all bills to that date had been billed either in Western Medicals name or the doctors' name that performed the exam. The billing department was told to resubmit those bills to the insurance companies in Capital Funding's name.

25.    By this time Western Medical had received numerous payments on these bills and they could not be redone as funds had already been received. Mr. Curley also at that time had notified several of the insurances companies and was discovering the same thing so it became obvious that Barbara Douglas had violated their agreement.

26.    In the meantime several other problems within the company had come to light regarding improper billing practices that were causing extreme concern with other staff members. These irregularities have since been reported to Texas Department of Insurance and an investigator has been assigned to review Western Medical.

27.    Mr. Curly came to Texas on July 18, 2008 and confronted Barbara Douglas regarding their agreement. On that day the IT technicians were in the office doing something at all the computers and the employees were all having problems. The

office staff over time had become very suspicious of the IT technicians as they were personal friends of Barbara Douglas, and had total access to everything through the computer server.

28.     Barbara Douglas willing signed a corporate resolution that day stating that she agreed to turn daily management of the company over to myself as requested by Capital Funding until a time that all their monies had been been paid. Barbara Douglas went to the United States Post Office with Mr. Curley and closed Western Medical's P.O. Box and had all mail forwarded to Capital Funding to assure all funds would come to Capital Funding.

29.     On Monday, July 21, 2008, we were conducting business as usual when numerous computer problems started occurring.  The first thing I noticed was that files had been moved or deleted and the office staff could not work on their computers. Barbara Douglas was contacted and stated there was nothing wrong with the computers, that she had been down the night before and everything was fine.  She stated she had things to do and would come by the office later.  I told her at that time we had an employee whose check had not cleared the bank and that he needed his money.  She stated that she was not sure there was any money in the account but she would get what she could and send it to him.

30.     She did arrive a little later and did something to the computers and got some of the information back.  I told her at that time that we really needed to discuss some things and work out how we were going to comply with her agreement and handle the legal side of her problem.  She appeared very unconcerned, but agreed to have my name put on the bank account.

31 After thinking about it I decided I would rather not be responsible for that. Barbara Douglas and Dr. Jerry Franz, the acting Medical Director, had discussed the

week before a plan to attempt to salvage the company and restructure. She was in full agreement to rename as a management company and redirect how the business was run. She was in full agreement and even personally typed on her computer a new contact to use for the doctors.

32.    We were to go and establish a d/b/a and apply for a Federal Tax number. We all agreed that Barbara Douglas could possibly have some legal issues to face and that the company should not suffer or anyone lose the monies that were owed to them. The issues with Texas Department of Insurance still needed to be addressed.

33.    After Barbara Douglas left the office that day, the staff expressed concerns as to what she might do to the computers, so I contacted a locksmith and had the locks changed to protect the data necessary to do our job. I did not hear from Barbara again that day, and the next morning, Tuesday, July 22, 2008, when I arrived at the office, the lock had been cut and Barbara Douglas stated she had come to the office around midnight and found herself locked out so she called a locksmith and reentered the building.

34.    The night before, I had contacted an TD man to look at the server and see if he could find the problem. He had worked several hours and was finding all kinds of problems – back doors and connections to remote access that was causing the trouble. I told Barbara Douglas that on the previous day and I believe at that time she was concerned about what might be found.

35.    About mid-day on Tuesday Barbara Douglas and Teresa Douglas returned to the office and stated she was "taking the company back" and she that she had filed a new resolution and appointed officers as she had the controlling stock. Her IT technician had been appointed along with Teresa Douglas as officers of the company.

36.     Barbara Douglas told everyone they had to leave the premises and could not remove anything personal or otherwise from the premises. When asked if they were going to receive their paychecks on Friday, July 25, 2008 was to be a payday covering the previous two weeks, they were told that she did not know  All employees, including myself, left the premises. The following day she told at least two of the staff that they could return but only if they signed an agreement that they would not talk to any former employees  They declined and filed unemployment the next day.

37.     It was my understanding that papers were served on her July 23, 2008 in connection with this lawsuit, but she remained on the premises and conducting business and working on the computers. She had the mail changed to come to Western Medical and opened a new business account in a bank other than the one she had been using.

38.     Some of the employees received pay and some did not. At least two of the ex-employees received short pay. The doctors have reported to me that Barbara Douglas and Dustin Rhoades (her IT technician) have formed a new company named Clearstone Management,and are continuing to operate.

39.     Five former employees have given statements to Texas Department of Insurance regarding improper procedures within the company regarding insurance claims  Barbara Douglas is attempting to pass blame to her staff by making untrue statements  She is attempting to discredit all other parties when in fact she at all times dictated procedures within Western Medical and only her and Teresa Douglas had any contact with monies and or factoring procedures.

**I**, Mary Ruth West, do swear under penalty of perjury that I have read the above Statement that I know its contents, and that to my knowledge and belief, such contents are true.

_Mary Ruth West_
MARY RUTH WEST

**SWORN TO AND SUBSCRIBED** before me this 31st day of July, 2008 by MARY RUTH WEST, who is _____ (a) personally known to me, or _____ (b) who has produced _TEXAS DRIVERS LICENSE_ as valid identification.

_Kimberly A. Cates_
NOTARY PUBLIC, STATE OF TEXAS AT LARGE

My Commission Expires:
_APRIL 26, 2011_

[Printed Name of Notary]

KIMBERLY A CATES
My Commission Expires
April 26, 2011

# EXHIBIT   11

Grand Jury   VL02010 PG134

D.A. #D1DC10900205MNI #8919584...........................................331st

No D1DC10900205          The State of Texas v. Barbara Ann Douglas

## INDICTMENT

Securing Execution of a Document by Deception – 2nd Degree Felony

Bond $

In The 403rd Judicial District Court of Travis County, Texas

## IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURY, for the county of Travis, State of Texas duly selected, empanelled, sworn, charged and organized as such at the January Term A.D. of 2010 of the 403rd Judicial District Court for said County, upon its oath presents in and to said court at said term that Barbara Ann Douglas, pursuant to one scheme and continuing course of conduct which began on or about the 27th day of February A.D. 2007, and continuing to on or about the 7th day of July A.D. 2008, in Travis County, Texas, said defendant did then and there with intent to defraud and harm the Texas Mutual Insurance Company, by deception create and confirm by words and conduct a false impression of fact, to wit: the said, Barbara Ann Douglas, caused to be submitted to the Texas Mutual insurance Company a form HCFA (Health Care Financing Administration) 1500 seeking payment for services rendered, said services were as follows: 16 units billed under CPT (current procedural terminology) code 97750, when in fact, 16 units of service were not rendered in accordance with the Texas Workers Compensation Medical Fee Guidelines not believing it to be true, that was likely to affect the judgment of the said Texas Mutual Insurance Company in the transaction, which deception caused the Texas Mutual Insurance Company to sign and execute documents affecting its property, service and pecuniary interest, where the value of the property, service or pecuniary interest was more than $100,000 but less than $200,000 or more, and said payments are of the tenor following:

Filed in The District Court
of Travis County, Texas

AUG 0 2 2010

3:35 p. M.
At
Amalia Rodriguez-Mendoza, Clerk

Grand Jury  VL02010 PG104

D.A. #D1DC10900204MNI #8919583.........................................................331st

No D1DC10900204          The State of Texas v. Howard Thomas Douglas

## INDICTMENT

Securing Execution of a Document by Deception – 3rd Degree Felony

Bond $

In The 403rd Judicial District Court of Travis County, Texas

### IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURY, for the county of Travis, State of Texas duly selected, empanelled, sworn, charged and organized as such at the January Term A.D. of 2010 of the 403rd Judicial District Court for said County, upon its oath presents in and to said court at said term that Howard Thomas Douglas, pursuant to one scheme and continuing course of conduct which began on or about the 27th day of February A.D. 2007, and continuing to on or about the 31st day of January A.D. 2008, in Travis County, Texas, said defendant did then and there with intent to defraud and harm the Texas Mutual Insurance Company, by deception create and confirm by words and conduct a false impression of fact, to wit: the said, Howard Thomas Douglas, caused to be submitted to the Texas Mutual Insurance Company a form HCFA (Health Care Financing Administration) 1500 seeking payment for services rendered, said services were as follows: 16 units billed under CPT (current procedural terminology) code 97750, when in fact, 16 units of service were not rendered in accordance with the Texas Workers Compensation Medical Fee Guidelines not believing it to be true, that was likely to affect the judgment of the said Texas Mutual Insurance Company in the transaction, which deception caused the Texas Mutual Insurance Company to sign and execute documents affecting its property, service and pecuniary interest, where the value of the property, service or pecuniary interest was more than $20,000 but less than $100,000 or more, and said payments are of the tenor following:

Filed in The District Court
of Travis County, Texas

AUG 0 2 2010

at_____ 3:35 p. M.

Amalia Rodriguez-Mendoza, Clerk

# EXHIBIT   12

# Texas Mutual's Blog

Just another WordPress.com weblog

## Doctor and Daughter Indicted on Felony Workers' Compensation Charges

### August 12, 2010

Texas Mutual Insurance Company announced that a Travis County grand jury indicted Howard T. Douglas, III M.D. of Hurst; his daughter, Barbara A. Douglas of Denton; and her company, Western Medical Evaluators, on felony workers' compensation fraud-related charges. The indictments were the results of an investigation conducted by Texas Mutual.

Western Medical Evaluators provided functional capacity evaluations to injured workers in Texas. The indictments allege that between February 2007 and July 2008, Douglas, his daughter, and Western Medical overbilled Texas Mutual for the time taken to perform evaluations.

The Western Medical Evaluators investigation was part of the Texas Mutual zero tolerance for fraud policy. Texas Mutual maintains three teams of investigators permanently assigned to investigate every report of suspected fraud.

*Note: A grand jury indictment is a formal accusation – not a conviction – of a criminal conduct.*

Ads by Google
### PA Workers Comp Problem?
Helping injured workers in PA Workers Comp is all we do!
www.bnlegal.com
### Medical Insurance Institutions
Further Your Career With a Medical Insurance Degree From Fortis!
www.Fortis-College.net
### Criminal Defense Attorney
Aggressive Former Prosecutors Free Consultation!
www.andersonrogers.com
### Need OWCP Attorney help?
The OWCP Attorney can get you paid a Schedule Award and much more
www.theOWCPattorney.com/owcp

Posted in Fraud, Uncategorized | 2 Comments »

Like   Be the first to like this post.

## 2 Responses to "Doctor and Daughter Indicted on Felony Workers'

# EXHIBIT   13



**Featured Stories**

Tennessee Sobriety Tests, Arrests

Calif. Senator Pleads Not Guilty

News | Markets | Jobs |

Search

**Current Magazine**

Read Online

Subscribe

On the iPad

| Front Page | News | Topics | Magazines | Directories | Jobs | Features | Subscribe |

| Most Popular | National | International | East | Midwest | South Central | Southeast | West |

**Burns & Wilcox**
BROKERAGE

LEARN MORE ◢

# Texas Workers' Comp Div. Assesses $285K in Fines June – Oct. 2008

January 9, 2009

Email This    Print    Newsletters

Recommend  0 |   Tweet  0    Share

**Article          Comments**

The Texas Department of Insurance Division of Workers' Compensation (TDI-DWC) from June through October 2008 assessed administrative penalties totaling $285,775 in disciplinary orders issued by Commissioner of Workers' Compensation Rod Bordelon.

Commissioner's orders are subject to appeal to state district court within 30 days after being issued.

A word from our sponsor:


Smart Choice

Need top-rated markets for your agency? Smart Choice can help! We offer access to quality markets with no start-up or monthly fees, discounted E&O, and the chance to earn bonus and contingency shares. Plus you'll retain 100% ownership of your book of business! Click here to contact us today!

TDI-DWC Disciplinary Orders June – October 2008:

Ace American Insurance Company, Philadelphia, PA
Order No.: DWC-08-0074
Date of Order: Aug. 20, 2008
Action Taken: Fined $17,500
Violation(s): Failure to timely pay an Independent Review Organization (IRO) fee; improper denial of a preauthorized medical service; improper denial of a medical bill.

Ace American Insurance Company, Philadelphia, PA
Order No.: DWC-08-0075
Date of Order: Aug. 20, 2008
Action Taken: Fined $14,875
Violation(s): Failure to timely initiate temporary income benefits (TIBs) payments.





LEARN MORE ◢

**FREE NEWSLETTERS**

Sign up to receive insurance news alerts!

☑ Daily Insurance Headlines
☑ Most Popular this Week
☑ MyNewMarkets.com Daily
☑ Insurance Jobs Newsletter (weekly)
☑ Carrier Management (new)

Enter your email    Subscribe

Ace American Insurance Company, Ace Fire Underwriters Insurance Company, Ace Indemnity Insurance Company, Ace Property and Casualty Insurance Company, Bankers Standard Fire and Marine Company, Bankers Standard Insurance Company, Century Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, Pacific Employers Insurance Company of Philadelphia, PA
Order No.: DWC-08-0081
Date of Order: Sept. 4, 2008
Action Taken: Fined $50,000
Violation(s): Failure to timely provide information requested by TDI-DWC.

American Casualty Company of Reading, Pennsylvania of Chicago, IL
Order No.: DWC-08-0056
Date of Order: June 10, 2008
Action Taken: Fined $2,950
Violation(s): Late payment of temporary income benefits (TIBs).

American Contractors Insurance Group of Dallas
Order No.: DWC-08-0069
Date of Order: Aug. 20, 2008
Action Taken: Fined $5,000
Violation(s): Failure to pay, reduce, deny or determine to audit the health care provider's claim in a timely manner; failure to comply with an order or decision of the commissioner (two instances).

American Zurich Insurance Company of Schaumburg, IL
Order No.: DWC-08-0050
Date of Order: June 6, 2008
Action Taken: Fined $3,000
Violation(s): Failure to take final action on a medical bill within 45 days of receipt (two instances).

Howard T. Douglas, M.D. of Irving
Order No.: DWC-08-0080
Date of Order: Aug. 29, 2008
Action Taken: Fined $10,000
Violation(s): Failure to respond to a request for letter of clarification within five days of receipt; failure to timely file a Report of Medical Evaluation with TDI-DWC, the injured employee, the injured employee's representative, and the insurance carrier (three instances).

Employers General Insurance Company of Rock Island, IL
Order No.: DWC-08-0091
Date of Order: Oct. 16, 2008
Action Taken: Fined $30,000
Violation(s): Inappropriate denials of payment for preauthorized services (81 instances); and inappropriate use of denial code to deny payment for services not requiring preauthorization (35 instances), as found during a medical billing and preauthorization processing audit.

Employers Mutual Casualty Company of Des Moines, IA
Order No.: DWC-08-0055
Date of Order: June 10, 2008
Action Taken: Fined $20,000
Violation(s): Improper denial of preauthorized medical services.

Sameer A. Fino, M.D., of Mesquite
Order No.: DWC-08-0054
Date of Order: June 10, 2008
Action Taken: Fined $1,250
Violation(s): Failure to assign a specific date at which maximum medical improvement (MMI) was reached; failure to state an MMI on a Report of Medical Evaluation or to sign the form; failure to comply with a rule of the workers' compensation commissioner; failure to timely file a Report of Medical Evaluation.

Hartford Casualty Insurance Company, Hartford Insurance Company of the Midwest, Twin City Fire Insurance Company of Hartford, CT

**MOST POPULAR**

| Now | This Week | Commented |

**Like Sorry, Dad, for Facebook Post Nixing $80K Settlement**

**Berkshire Hathaway Specialty Insurance Launches Healthcare Umbrella Policy**

**Texas Architecture Firm Says $60M High School Stadium not Flawed**

**House Could Vote on Flood Insurance This Week**

**Study Says N.Y. 'Scaffold Law' Drives Up Construction Costs, Causes Injuries**

More Top Stories

Have a news tip? Tell us.



**CURRENT ISSUE**



Read Online

Download PDF

Subscribe

**Available on the iPad**

**PARTNER CENTER**



PROPERTY AND CASUALTY

**NEW BOOK**

INSURANCE CONCEPTS SIMPLIFIED



**FEATURED VIDEOS**



**Barney & Barney Chief: Acquisition to Fuel Growth**
Listen Now

# **<u>EXHIBIT   14</u>**



MYNEWMARKETS.COM | CLAIMS JOURNAL | INSURANCE JOURNAL TV | ACADEMY OF INSURANCE | CARRIER MANAGEMENT

**Featured Stories**

Tennessee Sobriety Tests, Arrests

Calif. Senator Pleads Not Guilty

News ▮ Markets ▮ Jobs ▮

Search

**Current Magazine**



Read Online

Subscribe

On the iPad

| Front Page | News | Topics | Magazines | Directories | Jobs | Features | Subscribe |

Most Popular International National Most Popular Magazine Midwest South Central Video/Podcasts Web Newsletters



# Court Orders Doctor to Repay $98K to Texas Mutual

February 21, 2013

Email This     Print     Newsletters

Tweet

**Article**          Comments

Texas Mutual Insurance Co. announced that a Travis County district court convicted Howard T. Douglas III, M.D., of Hurst, Texas, and his company, Western Medical Evaluators, on felony workers' compensation fraud-related charges.

Western Medical Evaluators, Douglas and his daughter, Barbara A. Douglas, were indicted in 2010 on charges that they overbilled Texas Mutual for the time taken to perform functional capacity evaluations.

Howard Douglas' sentence of eight years' confinement was suspended, and he was placed on probation for 10 years. Douglas was ordered to pay $98,411 in restitution to Texas Mutual, in addition to a $500 fine, court costs and other fees. Western Medical Evaluators was fined $1,000.

The court also ordered Douglas to report his conviction to the Texas Medical Board and to cease performing or billing for functional capacity evaluations and designated doctor examinations. The court denied Douglas' motion for a new trial.

Source: Texas Mutual Insurance Co.

**FREE NEWSLETTERS**

Sign up to receive insurance news alerts!

☑ Daily Insurance Headlines
☑ Most Popular this Week
☑ MyNewMarkets.com Daily
☑ Insurance Jobs Newsletter (weekly)
☑ Carrier Management (new)

Enter your email     Subscribe

A word from our sponsor:

CATLIN
Underwriting Ambition

Catlin US offers specialty insurance and reinsurance products to our US and Latin American client base. Both our underwriters and claims staff have extensive knowledge and experience in their

# EXHIBIT   15

MYNEWMARKETS.COM | CLAIMS JOURNAL | INSURANCE JOURNAL TV | ACADEMY OF INSURANCE | CARRIER MANAGEMENT



**Featured Stories**

Tennessee Sobriety Tests Arrests

Calif. Senator Pleads Not Guilty

News | Markets | Jobs |

Search

**Current Magazine**



Read Online

Subscribe

On the iPad

| Front Page | News | Topics | Magazines | Directories | Jobs | Features | Subscribe |

Most Popular   National   International   East   Midwest   South Central   Southeast   West



McGOWAN PROGRAM ADMINISTRATORS

America's leading writer of specialized insurance programs.

Learn More >   www.mcgowancompanies.com

# Texas Mutual: Woman Sentenced in Workers' Comp Fraud Scheme

February 25, 2013

Email This    Print    Newsletters

Recommend    Tweet  10    Share  4

Article        1 Comments

Texas Mutual Insurance Co. announced that Barbara A. Douglas of Denton pleaded no contest to felony workers' compensation fraud-related charges.

Douglas, her father, Howard T. Douglas, III, M.D., of Hurst and their company, Western Medical Evaluators, were indicted in 2010 on charges that they overbilled Texas Mutual for the time taken to perform functional capacity evaluations.

A word from our sponsor:



Catlin US offers specialty insurance and reinsurance products to our US and Latin American client base. Both our underwriters and claims staff have extensive knowledge and experience in their target markets and focus on delivering customized and innovative solutions with a high level of service.

A Travis County district court sentenced Barbara A. Douglas to 10 years' probation and ordered her to pay $81,368 in restitution to Texas Mutual. The court also ordered Douglas to perform 125 hours of community service and to cease billing, directly or indirectly, for any medical services.

Howard Douglas previously was sentenced to 10 years' probation and was ordered to pay $98,411 in restitution to Texas Mutual. He also must pay a $500 fine, court costs and other fees. Western Medical Evaluators was fined $1,000.

Source: Texas Mutual Insurance Co.

FILL YOUR NEXT JOB IN **RECORD TIME** WITH MONSTER.



Post a job »

monster

Find Better

FREE NEWSLETTERS

Sign up to receive insurance news alerts!

☑ Daily Insurance Headlines
☑ Most Popular this Week
☑ MyNewMarkets.com Daily
☑ Insurance Jobs Newsletter (weekly)
☑ Carrier Management (new)

Enter your email    Subscribe

# EXHIBIT   16

MYNEWMARKETS.COM | CLAIMS JOURNAL | INSURANCE JOURNAL TV | ACADEMY OF INSURANCE | CARRIER MANAGEMENT



**Featured Stories**

Tennessee Sobriety Tests, Arrests

Calif. Senator Pleads Not Guilty

News | Markets | Jobs |

Search

**Current Magazine**



Read Online
Subscribe
On the iPad

| Front Page | News | Topics | Magazines | Directories | Jobs | Features | Subscribe |

Most Popular   National   International   East   Midwest   South Central   Southeast   West

# Texas Mutual: 3rd Provider Sentenced in Fraud Scheme

April 15, 2013

Email This      Print      Newsletters

Recommend   0   Tweet  5      Share  5

**Article**          **1 Comments**

Texas Mutual Insurance Co. announced that Michael T. Douglas of Denton, Texas, pleaded guilty to charges of perjury in a workers' compensation fraud-related case.

A Travis County district court sentenced Douglas to one year of deferred adjudication and ordered him to pay a $300 fine.

*A word from our sponsor:*



Need top-rated markets for your agency? Smart Choice can help! We offer access to quality markets with no start-up or monthly fees, discounted E&O, and the chance to earn bonus and contingency shares. Plus you'll retain 100% ownership of your book of business! Click here to contact us today!

Douglas presented false testimony on matters relating to the investigation of his father, Howard T. Douglas, III, M.D.; his sister, Barbara A. Douglas; and their company, Western Medical Evaluators.

Western Medical Evaluators, Douglas and his daughter, Barbara A. Douglas, were indicted in 2010 on charges that they overbilled Texas Mutual for the time taken to perform functional capacity evaluations.

Howard T. Douglas was sentenced in February and ordered to pay $98,411 in restitution to Texas Mutual, in addition to a $500 fine, court costs and other fees. Western Medical Evaluators was fined $1,000.

His daughter also was sentenced in February to 10 years' probation and ordered her to pay $81,368 in restitution.

**FREE NEWSLETTERS**

Sign up to receive insurance news alerts!

☑ Daily Insurance Headlines
☑ Most Popular this Week
☑ MyNewMarkets.com Daily
☑ Insurance Jobs Newsletter (weekly)
☑ Carrier Management (new)

Enter your email   Subscribe

WME Docs Reviews were fraudulent.

11/04/2011  13:58    8185668257          GALLAGHER SCHOENFELD          PAGE  03/03

## Robert L. Barrett MD
## Karen M Grant MD
## James R Winn MD

# Texas Health Care PLLC
1201 Eighth Avenue
Fort Worth TX 76104
817 335 9479
817 882 9910 (Fax)


EXHIBIT
B
ALL STATE LEGAL

October 31, 2011

Ronald H Surkin
Gallagher, Schoenfeld, Surkin, Chupein, & DeMis
28 West Second Street
Media Pennsylvania 19063

RE: Preitz v American Airlines, et al.

Dear Sir,

I am in receipt of your request for records regarding a Mr Wallace T Preitz II, an American Airlines employee with a lawsuit, civil action no 2011-cv-0044 CDJ in the United States District Court for The Eastern District of Pennsylvania.

I have no records in my possession regarding Mr. Preitz. I do not have any written agreements, contract, service agreement, purchase order or similar documents between myself and Western Medical Evaluators Inc. They periodically requested I review their medical records and answer a questionnaire attached with it.

I can tell you that the copy of the Estern Medical Evaluators inc letterhead purported to have been written and signed by me was not of my doing. I do not have nor have I ever had any of their stationary

Sincerely,

Karen M Grant, MD

The above statements are made by me under penalty of perjury.

11/07/2011
Date

KAREN M. GRANT, M.D.

# EXHIBIT   17


Get 24/7 Help for Mom & Dad!

Only $21.95/mo. No Hidden Fees!

Learn More


Bay Alarm Medical

# Watchdog Bytes

Watching out for the little guy by keeping an eye on government and business

Home

Categories

Archives

Subscribe

05/09/2012

## Hurst doctor indicted on workers comp charges -- again



A North Texas doctor identified as being from Hurst has been indicted by a Travis County grand jury on charges of felony workers' compensation fraud-related charges, according to a Texas Mutual press release.

Dr. Howard T. Douglas, III, is no stranger to regulatory and criminal accusations.

A May 1 indictment says his company, North Texas Medical Evaluators of Carrollton, provided functional capacity evaluations to injured workers in Texas. The company is accused of overbilling Texas Mutual for the time taken to perform evaluations from December 2007 to December 2009.

Previously, Douglas was indicted in August 2010, along with his daughter Barbara A. Douglas of Denton, and her company Western Medical Evaluators, on felony workers' compensation fraud-related charges. The indictment also accuses that company of overbilling Texas Mutual for the time taken to perform evaluations from February 2007 to July 2008.

Dr. Douglas has previously been disciplined by the Texas Medical Board, including a suspension of his medical license from 1997 to 1999. The suspension was due to unprofessional or dishonorable conduct likely to "deceive or defraud the public and professional failure to practice medicine in an acceptable manner consistent with public health and welfare," according to the medical board. He was also assessed a $10,000 fine.

In addition, Texas Office of Inspector General online records show that a doctor with the same medical license number as Douglas' was excluded from health and human services programs from  Sept. 1998 to December 1999.

Texas Mutual is the state's leading provider of workers' comp insurance.

Texas Medical Board records indicate that Douglas works in Dallas. A Texas Mutual spokesman could not immediately be reached for comment.

-- Darren Barbee

Workers comp fraud case statistics from Texas Mutual:

| Case Activity | 2009 | 2010 | 2011 |
|---|---|---|---|
| Claimant referrals to SID | 1,443 | 1,567 | 1,437 |
| Claimant fraud convictions | 13 | 9 | 10 |

# EXHIBIT   18

FAX COVER SHEET

To: Lawrence Meadows
From: Kathy Emery
Re: AA Disability Claim

Contents: Signature Sheets of Karen M. Grant

Lawrence:  I don't know if you got my fax Saturday.  It may not
have gone through.  Regarding the agreeing statement by Karen
Grant, I spoke to soon.  The statement is similar but different.  I'm
going to look at the Miller Case.  It seems like I read one identical
to yours somewhere.  Perhaps I had read yours before on the Pacer
web-site.

I am attaching the Karen Grant signature pages which also contains
the statement that Grant agrees with the report.  Check out the
signatures.  While one of my pages is an obvious *"cut and paste"*
signature (the signatures being identical in every way), the
signature on your page is very different.  Considering that my
documents came first, your document then has a decidedly
different signature for Ms. Grant.  Check out the K, the a, the n, the
M, the G, the t and the MD.  The letters are each noticeably
different. This very unusual for a doctor's signature.

Based on the information I derived from the lawsuit against WME
by Capital Funding and from Capital Funding's attorney, and my
own *"cut and paste"* documents, I think it is reasonable to assume
that there has been a manipulation of record documents by WME.
If my document contains her original signature, then your
document appears to be nothing more than a *"poor"* forgery.

Kathy 

Aug 04 08 12:28a      Lawrence M Meadows                    4356152758                        p.39

## Western Medical Evaluators, Inc.

1302 Teasley Lane ~ Denton, Texas 76206
Phone (940) 565-1820 ~ Fax (940) 565-1840
www.westernmed.us

*Dr. Grant Declares she*
*— Never had WME Letterhead*
*— Never Practiced at 1302 Teasly Lane.*

June 5, 2008

American Airlines
P.O. Box 619616
MD #5134-HDQ1
DFW Airport, TX 75261

RE: Lawrence Meadows
Employee ▓▓▓▓
SS #: ▓▓▓▓

**Karen Grant, M.D., Response submitted:**

          After thorough review of the medical records and consultation with Dr Moeller of psychiatry, I am prepared to offer my opinion with regards to the claim of disability by Lawrence Meadows. I agree with Dr Moeller's assessment that this pilot has not been appropriately evaluated, tested and diagnosed with ▆▆▆▆▆▆▆▆▆▆ that causes impairment. As all of the medications that would be used to treat any of Mr Meadow's claims for disability are grounding, he should endeavor to find such evaluation and obtain documentation that he is receiving treatment for these diagnoses and attempting to wean of grounding medications. Further it is evident that he has not received appropriate counseling after 12/26/07 to document "continued" disability from his ▆▆▆▆▆▆▆▆▆▆▆▆ An extensive testing and evaluation by a specialist needs to be performed and documented before diagnosing and disabling this pilot probably for life.

Should you have any questions, please do not hesitate to call me.

*Different than Dr. Grant's*
*Signatures on Emery's & Preitz' Report*

Karen M Grant
Senior Aeromedical Examiner

FROM                          (FRI) SEP 28 2007 13:54/ST. 13:53/No. 7517803583 P   2

Emery, Kathy, PR, AA –

## Jack Greener, MD
## Karen Grant, MD
### 1302 Teasley Lane ~ Denton, TX 76205
### Ph: (940) 565 – 1820 ~ Fax: (940) 565 – 1840

*(handwritten:)* Dr Grant
→ Never had this Letter
– )AN ONever Practiced
1302 Teasley Lane

### *Peer Review*

| | |
|---|---|
| **Pilot Name:** | Kathy E. Emery |
| **Employer:** | American Airlines, Inc. |
| **Employee #:** | |
| **Social Security #:** | |
| **Date of Birth:** | |
| **Last Day Worked:** | 2003 |
| **Conditions Claimed:** | |

**Pilot LTD Benefits Denied or
Terminated/Discontinued
Effective:**            January 31/2007

**Reason for Benefit Denial:**    Inability to document continuing disability as set forth in
the Plan provisions.

**Questions:**

Please review all documents enclosed (referencing the Pilot LTD definitions and provisions, as
well as all other medical and claim information) and advise if this Pilot is disabled from her own
occupation beyond 1/31/2007, providing evidence-based support for your determination.
Additionally, please answer the following questions regarding this Pilot's case:

1. Does the evidence reflect continuing presence of ▓▓▓▓▓▓▓▓▓▓ s on or beyond
   January 31/2007? If so, specify ▓▓▓▓▓▓▓ are present, and indicate whether or not
   they continued to exist at a level of severity requiring medical treatment.
2. Does the evidence reflect objective findings of these aforementioned ▓▓▓▓▓▓▓
   ▓▓▓▓▓▓ or other ▓▓▓▓▓▓ diagnoses? Please explain.
3. Does the evidence reflect continuation of disability, arising from her ▓▓▓▓▓
   diagnoses, beyond January 31/82007? Why or why not?
4. Does the evidence reflect continuation of ongoing regular medically-appropriate
   treatment recommended/administered of these diagnoses? Please explain.
5. Does the evidence reflect that the Pilot has sought and received medically appropriate
   treatment recommended/administered for these diagnoses? What type, frequency, and
   duration of treatment is medically appropriate in this case? Does she require continuation
   of treatment beyond January 31/2007? Please explain.

**Documents Reviewed:**
Pilot Job Description

1

305 758 8310          p.2

FROM                                    (WED)OCT 17 2007 13:59/ST. 13:57/No. 7517803139 P 11



In summary therefore, from all the information available there is no evidence that the pilot is disabled from performing her job duties from January 31, 2007 forward.  However there is no clinical evidence that ▮▮▮▮▮▮ as been of benefit in her treatment or is medically necessary for the treatment of her condition at this time.

Jack Greener, M.D.
Board Certified Psychiatry
Geriatric Psychiatry and Forensic Psychiatry
Florida License 31794

Dr. Greener did teleconference with Dr. Grant.  She does agree with his report and has no additional remarks.  PERFORMED FALL 2007

Karen M. Grant, MD
**Senior Aviation Medical Examiner**

p.5                    305 758 8310

DR GRANTS   REVIEW OF WALLY PRETTZ

SIGNED IN   JUN 2008

Should you have any questions, please do not hesitate to call me.

Karen M Grant
Senior Aeromedical Examiner

# EXHIBIT   19

**Robert L. Barrett MD**

**Karen M Grant MD**

**James R Winn MD**

**Texas Health Care PLLC**
1201 Eighth Avenue
Fort Worth TX 76104
817 335 8478
817 882 9910 (Fax)

February 20 2014

To Whom It May Concern:

I have no records in my possession regarding Mr. Lawrence Meadows. I do not have any written agreements, contract, service agreement, purchase order or similar documents between myself and Western Medical Evaluators, Inc. They periodically requested I review their medical records and answer a questionnaire attached to the records.

I can tell you any copy of Western Medical Evaluations, Inc. letterhead purported to have written and signed by me was not of my doing. I do not have nor have I ever had any of their stationary. I have never had practice located in Denton Texas.

Sincerely,

Karen M. Grant, M.D.

Aug 04 08 12:28a      Lawrence M Meadows                              4356152758                    p.39

*Dr Grant never had this letterhead, nor any WME Stationary*



# Western Medical Evaluators, Inc.

1302 Teasley Lane ~ Denton, Texas 76206    *Dr. Grant Never Worked OR Practiced here*
Phone (940) 565-1820 ~ Fax (940) 565-1840
www.westernmed.us

June 5, 2008

American Airlines
P.O. Box 619616
MD #5134-HDQ1
DFW Airport, TX 75261

RE: Lawrence Meadows
Employee ███████
SS #: ███████

**Karen Grant, M.D., Response submitted:**    *Dr. Grant Declared not written by her.*

After thorough review of the medical records and consultation with Dr Moeller of psychiatry, I am prepared to offer my opinion with regards to the claim of disability by Lawrence Meadows. I agree with Dr Moeller's assessment that this pilot has not been appropriately evaluated, tested and diagnosed with ████████████████ that causes impairment. As all of the medications that would be used to treat any of Mr Meadow's claims for disability are grounding, he should endeavor to find such evaluation and obtain documentation that he is receiving treatment for these diagnoses and attempting to wean of grounding medications. Further it is evident that he has not received appropriate counseling after 12/26/07 to document "continued" disability from his ██████████████. An extensive testing and evaluation by a specialist needs to be performed and documented before diagnosing and disabling this pilot probably for life.
Should you have any questions, please do not hesitate to call me..

*Dr. Grant Declared neither Signature*

Karen M Grant
Senior Aeromedical Examiner

# EXHIBIT   20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.:  10-22175-Civ-Altonaga/Brown

LAWRENCE MEADOWS,

     Plaintiff,

v.

AMERICAN AIRLINES, INC.,
AMERICAN AIRLINES, INC. PILOT
RETIREMENT BENEFIT PROGRAM &
PENSION BENEFITS ADMINISTRATION
COMMITTEE,
as fiduciary of the Program.

     Defendants.

_____/

## PLAINTIFFS SECONDS MOTION AND MEMORANDUM FOR  RULE 11(b) SANCTIONS AGAINST DEFENDANT'S COUNSEL TERRENCE CONNER, JENNFIFER  ELLIS and GRACE MORA,  FOR SUBMITTING TO  THE COURT SIGNED PLEADINGS CONTAINING MISREPRESENTATIONS SUPPORTED BY MATERIAL MISTATEMENTS OF FACT AND FRAUDULENT EVIDENCE

     I,  Lawrence M. Meadows, plaintiff,  in the above styled cause, hereby file  this motion under the Fed. R. Civ. P., Rule 11.  *SIGNING PLEADINGS, MOTIONS, AND OTHER PAPERS; REPRESENTATIONS TO THE COURT; SANCTIONS,* and move for Sanctions against Defendant's counsel for its violations of ¶ *11. (b) REPRESENATIONS TO THE COURT;* and also for violations under Fla. S.D. Local Rule 11.1(c.) *ATTORNEYS, Professional Conduct;* which states in part, *" (c),  Professional Conduct. The standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar. For a violation of any of these canons in connection with any matter pending before this Court, an attorney may be subjected to appropriate disciplinary action."*

Verified Motion

## **INTRODUCTION**

The Plaintiff is particularly disturbed by his discovery of newfound incontrovertible evidence showing that the purportedly "independent" medical doctors disability claim review reports submitted to this Court by the Defendant, have proven to be anything but. In fact, these "independent" medical doctors reports used to deny Plaintiff's disability benefits, were instead outright fraudulent fabrications and forgeries. Unfortunately, the Defendant mislead this Court, and allowed it to detrimentally rely upon those reports when rendering its Opinion and Final Summary Judgment on Mar. 24, 2011. As a result, the Plaintiff has suffered a gross manifest injustice.

While not an attorney, the Plaintiff himself was a former U.S Air Force Officer, who served as a military pilot during Gulf War I, before he was honorably discharged and began his career as a professional airline pilot at American Airlines. As such, he has been held to the highest standards, and was expected to conduct himself professionally, honorably, and ethically. As such, he would expect no less from Defendant's counsel, both as Officers of Court and as required under the Florida Rules of Professional Conduct. Therefore, the Plaintiff as a matter of professional courtesy made multiple written request to Defendant's counsel to meet and confer on his newfound evidence of fraudulent submissions to this Court. However, said requests were arrogantly rebuffed by the Defendant's local counsel Terrence Conner and Jennifer Ellis, of Hunton & Williams, LLP., who refused to contact Plaintiff on this matter. (Exhibit 1).

Therefore, Plaintiff has been left with no choice, but to file this 2nd Rule 11(b) Motion for Sanctions. Defendant's counsel's penchant for continued unethical conduct shocks the Plaintiffs sensibilities. Further, Plaintiff hopes this Courts is equally shocked and aggressively imposes appropriate sanctions against the Defendant's individual attorney's, and their law firm.

As the Court may recall,  just recently on  Oct. 16, 2013, the  Plaintiff  was left with no choice, and forced to previously filed a Rule 11 [ECF No. 87]  against Defendant. Specifically, based on the Defendants  filing a combined Reply in support of its Motions For Bill of Costs and Attorney's Fees [ECF No. 84] . Wherein, Defendant attempted to  discredit the Plaintiff,  and made multiple material misrepresentations of fact in a effort to distort the record, in an not so transparent attempt to deflect attention from its own bad faith and unethical conduct from the court. Ultimately, the Court entered an Order. striking said pleadings, and denying Defendant's Motions For Bill of Costs and Attorney's Fees as moot [ECF No. 88].

## ARGUMENT

### A.  Defendant's Unethical Conduct Not Discrete Act but Instead a Serial Violation of the Rules

This isn't the first time Defendants counsel has acted in bad faith and engaged in unethical conduct in this matter, but instead this is a continuation of  serial ethics and rule violations. Moreover, Defendant's Counsel has clearly shown  a willingness to not play by the rules,  taking  whatever action necessary to and pervert justice to its desired results.

Throughout,  the pendency of these proceedings  Defendant counsel has engaged in the following bad faith acts and unethical behavior; 1)  Concealment of relevant information to include key documents[1] relating to Defendant's "Pilot Disability Nurse Case Management Cost Savings" scheme[2], and the procedural irregularities and fraud  of its "Independent" medical

---

[1]      These documents were produced only after  Defendant was sanctioned for discovery violations in another disabled pilots case in this very same district court. *See Emery v. American Airlines, Inc.,*  (Fla. S.D., Case 1:08-cv-22590-WMH ).

[2]      The pilot disability benefit "cost savings" scheme, was implemented by American Airline's Medical Department to fraudulently deny and/or terminate  rightful pilot disability benefits based on cost saving alone. In an effort to aide with  grossly underfunded Pension Plans, which annual SEC 10-K reports showed to be underfunded by $2.5B.  This scheme used highly

doctor disability claims reviewer, Western Medical Evaluators (WME)[3], 2) Concealment of

evidence showing existence of both Structural and Actual conflict, using a "cost savings"

scheme to aide its grossly underfunded pension plans, which resulted in securities fraud under

Sarbanes-Oxley (SOX) Act, 3) Retaliation, within just two weeks of engaging in protected SOX

Whistleblower activity[4]; to include Termination of Meadows employment and permanent

removal from the Pilot System Seniority List.   4) Defendant's local counsel, Ms. Mora, called in

sick on the eve of the Feb. 23, 2011 deposition of American's disability case manger Nurse

Spoon, after Plaintiff's counsel was already at the airport enroute to the deposition at American's

Headquarters in Dallas, 5) Violation of FRCP 26(a), and untimely production of "Costs

Savings" reports on Mar. 11, 2013, almost four months after initial discovery requests, and only

---

structured cost savings reports, and net present value calculations of the cost savings achieved if
benefits were prematurely terminated. Further, these reports tracked Meadows as one of the 84
disabled pilots who were targeted for cost savings (Bates AA-000181) . Based on Meadows
discovery of the pilot disability cost savings scheme, facilitated through the use of "WME",
Meadows reasonably believed American was intentionally underfunding rightful disability
pension funding obligations, which thereby artificially inflated its reported corporate earnings,
giving rise to SEC fraud under the Sarbanes-Oxley (SOX) Act.

[3]        "WME" was not a "clinical-source" as required under the Summary Plan Document
¶ 5.4(c) [AR 000636], and Supp-F ¶ 5.(h) of the CBA [AR 000841-42], but instead was a
medical billing service that was rife with fraud and procedural irregularities; its corporate
medical director had his medical license revoked for fraud likely to deceive the public, the office
manager was a convicted felon, another manager testified in *CFS v. Western Medical Evaluators*
(Fla. S.D. 0:08-cv-61106-PAS) that WME's owner Barbara Douglas fraudulently fabricated
doctors evaluation reports and forged their signatures. WME's conduct was so egregious that just
one month after reviewing and denying Mr. Meadows and four other AA Pilots cases, it was
shut down by the Texas Insurance Board. Immediately thereafter its principals were indicted for
felony medical claim fraud by a Texas Grand Jury, and have since been convicted on multiple
counts of fraud, sentenced to confinement and forced to pay restitution. See [ECF No. 51-3 thru
51-11, Rule 59 Supporting exhibits].

[4]        Meadows filed a SOX Whistleblower Complaint in Sep. 2011. That complaint is pending
a Department of Labor ALJ hearing on Aug. 18, 2014, along with separate EEOC charges of
discrimination and retaliation. However, just two weeks after engaging in his protected
whistleblower activity, American threatened Meadows with termination; and ultimately removed
him from the seniority list, and terminated his employment.

Verified Motion

4

two weeks before this court entered Final Summary Judgment, 6) Postponed deposition of Nurse

Spoon for one month, and rescheduled it for Mar. 23, 2011, the very day before this court

entered its Final Summary Judgment, 7) Falsified Certification of Meet and Confer with

Plaintiff's counsel on Defendant's Motion for Bill of Costs, 8) Failed to timely provide, certify,

or verify Draft Attorney's Fee motion with timekeeper information, 9) Refused to stipulate to

withdraw its untimely and defective Motions for Bill of Cost and Motion for Attorney's Fees,

10) Defendant made disparaging remarks about Plaintiff and material misrepresentations to the

Court in its filed combined Reply in support of its Costs and Attorney Fees Motions, which was

ultimately stricken by this Court after Plaintiff filed his first Rule 11(b) motion, <u>and most</u>

<u>egregious of all, 11) Submitted to this Court fabricated and forged "independent" medical</u>

<u>doctors reports from Western Medical Evaluators, Inc.</u>

### B. "Smoking Gun" - Newfound Evidence Showing WME's " Independent" Medical Doctors Reports Used to Deny Plaintiff's Disability Benefits Were Fraudulent

Defendant denied Plaintiff's disability benefits using reports that were allegedly prepared

by "independent" medical doctors from Western Medical Evaluators, Inc (WME). Specifically,

Defendant submitted to the Court a report purportedly prepared and signed by Senior FAA

Aviation Medical Examiner, Dr. Karen Grant as shown in the Administrative Record, at

AR000156-175 (Exhibit 2). Said report was used by American's Pension Benefits

Administration Committee (PBAC) to support termination of Plaintiff's disability benefits, under

the guise of a full and fair review.

However, during the recent American Airlines-Allied Pilots Association Equity

Distribution Arbitration in late July 2013, Plaintiff learned that another disabled American

Airlines pilot, Wallace Preitz, was similarly stripped of his disability benefits submits using

"independent" medical doctors reports prepared by WME. See *Preitz v. American Airlines, Inc.*

(PAEDCE 2:2011-cv-00044). During the Arbitration Mr. Preitz submitted an affidavit from Dr. Karen Grant, stating that the report submitted by WME purported to have been written and signed by her was not of her doing. (Exhibit 3).   Further, Mr. Preitz's counsel had put Americans local ERISA counsel on notice of  Dr Grants fraudulent independent doctors report in Nov. 2011. Additionally,  during those same arbitration proceedings, Plaintiff also learned that a third disabled American Airlines pilot, Ms. Kathy Emery  was also similarly stripped of her disability benefits submits using independent medical doctors reports prepared by WME, and specifically Dr. Karen Grant. See  *Emery v. American Airlines, Inc.,*  (Fla. S.D., Case 1:08-cv-22590-WMH). Ms. Emery had previously submitted documents to this Court, and informed American's local ERISA counsel sometime during 2010, that her WME reports purported to have been prepared by Dr. Karen Grant had *"cut and paste signatures".* Now that American Airlines has exited bankruptcy, the stay was recently lifted, and both Preitz's and Emery's ERISA disability cases are pending adjudication.

This confirmed the Plaintiff suspicions that his WME reports were also likely fraudulent. He subsequently contacted Dr. Grant's office,  and submitted copies of his, Emery's and Preitz's reports each showing distinctly different signatures; asking Dr. Grant to examine those reports and verify  if  Mr. Meadows' report  actually contained her opinions and signature. Finally, on Feb. 24, 2014, Plaintiff received a signed declaration from Dr. Karen Grant; wherein she stated the report WME and Defendants purported to be her work, was not of her doing. Specifically, she declared ;

> *"I have no records in my possession regarding Mr. Lawrence Meadows. I do not have any written agreements, contract, service agreement, purchase order, or similar documents  between myself and Western Medical Evaluators, Inc...* <u>*I can tell you any copy of Western medical Evaluators, Inc letterhead purported to have written and signed by me was not of my doing. I do not have nor have I*</u>

*ever had any of their stationary. I have never had a practice in Denton, Texas."*
[as shown on WME's report]. (Exhibit 4).

In Sum, Dr. Grant's declaration clearly and definitively proves that the supposed "independent" medical doctors reports, performed by WME and submitted by Defendant to support its denial of Plaintiff's disability benefits, was nothing more than a fraudulent fabrication and forgery.

**C.  The Defendant Mislead the Court and Allowed it to Detrimentally Rely Upon on WME's  Fraudulent "Independent " Doctors Reports**

Furthermore, American's concealment of  its use of  procedurally flawed and fraudulent independent medical reviewer, WME,  coupled with its false  representations and submissions; shows it knowingly mislead the Court to believe those reports were otherwise legitimate and "independent".  , allowing the Court detrimentally relied on those reports, which significantly contributed to Plaintiff receiving a adverse Final Summary Judgment ruling on Mar. 24, 201. Wherefore, the Court's Opinion, stated in part;

> *"A de novo review of the evidence presents a close question as to whether Mr. Meadows was "disabled" under the Plan on and after December 26, 2007."* [ECF No. 48, pg 16],  and that it was, "...*a debatable question of fact as to whether Meadows was "disabled" at the time his benefits were terminated. Nevertheless, even if this court were to determine Defendant's decision was wrong, the court cannot say the decision was unreasonable for reasons stated below."* [ECF No. 48, pg.19] and further reasoned, "*Additionally, Defendants rely on the opinion of the independent medical doctors ["WME"] evaluating the sufficiency of Mr. Meadows claim."*  [ECF No. 48, pg.24]. (Emphasis added).

The newfound "smoking-gun" incontrovertible evidence of  Dr. Grant's Declaration, clearly shows that American Airlines was not only wrong in terminating Plaintiff's benefits, but was also most certainly unreasonable in doing so.  Had the Defendant and its Counsel not mislead the Court with the fraudulent "independent" medical doctors reports of WME, then the outcome in this case would have been decidedly different.

**D.   Defendants Made False Statements of Material Fact and Submitted Fraudulent Evidence to the Court and Failed to Correct It in Violation of Fla. S.D. Local Rule 11.1(c)**

Defendant has made multiple misrepresentations  in signed pleadings[5] supported by fraudulent evidence submitted to the Court,  not only in violation of  Fed. R. Civ. P. 11(b),  but also under Fla. S.D. Local Rule 11.1(c.); which indirectly  incorporates,  Florida Professional Rule 4-3.3 CANDOR TOWARD THE TRIBUNAL, (a) False Evidence; Duty to Disclose. A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. More specifically, Defendant asserted Plaintiff was given a full and fair review by "independent" medical doctors as supported by AR 000156-175, which is now known to be a false statement of material fact.

Sadly,  it's now readily apparent that, American Airlines and its Counsel either knew or should have known all along that WME's  "independent' medical doctors reports were in fact fraudulent fabrications and forgeries. Moreover, Defendants had multiple opportunities to correct its false statements of material fact to this tribunal. But for its continued bad faith concealment of fraud upon this Court, it could have otherwise  prevented this travesty of justice, and waste of judicial resources.  As noted in Argument B. above, American and its Counsel was put on notice of  the fraudulent 'independent" medical doctors reports of  WME's Dr. Karen Grant,  multiple times in various cases over the past few years; 1) In Pilot Mr. Preitz's PACDC ERISA case  in Nov. 2011,  2) In Pilot Ms. Emery's Fla. S.D. EIRSA case during 2010, 3) By Mr. Meadows via his brief/exhibits submitted to American's Executive V.P. of the Flight Department during his recent Feb. 27, 2014 Termination Grievance Hearing (#13-064),  4) On Feb. 28, 2014, by Mr.

---

[5]       Defendants have misrepresented that they have provide Plaintiff's claim a Full and Fair Review, supported by  fraudulent  "independent" doctors reports, within but not limited to the following pleadings; ECF No.s 15(¶22), 23,29,30,36, 37, and in the submitted Administrative Record, AR 00156-174, 000515-854, 000754, and 000841-842

Meadows via personal hand delivery to American's General Counsel and Chief Executive Officer of Corporate Affairs. Mr. Steve Johnson,  5) On Feb 28, 2014 by Mr. Meadows via personal hand delivery to American's Corporate In house counsel overseeing his ERISA case,  Senior Attorney Marjorie Powell, and  finally, 6) On Mar. 11, 2014, by Mr. Meadows via email to American Airlines local ERISA Counsel, Terrence Conner and Jennifer Ellis, of Hunton & Williams, LLP.  To date, American and its counsel continue to  defiantly ignored these damning facts,  and  have refused to correct their material misstatements of fact and fraudulent evidence submitted to this Court.

## **CONCLUSION**

Based on the foregoing,  and pursuant to Fed. Rule Civ. P. Rule 11(b), Fla. S.D. Local Rule 11.1(c.), and Florida Professional Rule 4-3.3(a)(1),  Plaintiff humbly submits that the Court should hold Defendant's counsel accountable for its misrepresentations and submission of fraudulent "independent" doctors reports [AR 000160]  to the Court, and its blatant refusals to correct the record. It is clear from the record evidence that Defendant's counsel willfully disregarded its duties of Candor to the Tribunal.  Here, Plaintiff submits there was a willful disregard of the ethical discretion, which goes well beyond a lack of "reasonable inquiry" as required by Rule 11(b).  Plaintiff further  submits that sanctions are also appropriate in this case as allowed under  Fla. S.D. Local Rule 11(c).  and request the Court vacate its Order and Final Summary Judgment [ECF. No. 48, 49],  and issue whatever sanctions it deems appropriate.

In closing, The Plaintiff is sickened and appalled as he writes this, and the Court should be appalled as well. Therefore, the Plaintiff respectfully requests the Court aggressively Sanction and Discipline Defendant's counsel and it's law firm, to the fullest possible; to include vacating the Court's Order and Final Summary Judgment [ECF No. 48,49], and instead granting Plaintiff's

Motion for Summary Judgment [ECF No. 31,32], and require payment of Plaintiff's attorneys fees and costs[6] incurred as a result of Defendant's bad faith unethical conduct. To do otherwise would be a travesty of justice, and leave the Plaintiff wronged and remediless.

### <u>Meet and Confer Certification</u>

I, Lawrence M. Meadows , Pro Se Plaintiff and moving party, made multiple attempts to confer with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion, but was unable to do so.

Signed: March 14, 2014, and
To be Filed:  April 4th, 2014

Respectfully submitted,

Lawrence M. Meadows, Pro Se
Po Box 4344
Park City, UT 84060
Telephone: (516) 982-7718
Facsimile: (435) 604-7850
lawrencemeadows@yahoo.com

---

[6]    Upon Courts request, Plaintiff will provide affidavit and supporting documents of all attorneys fees and costs incurred in this Fla. S.D./11h Cir. EIRSA litigation totaling $151, 399.28

Verified Motion

10

**VERIFICATION**

I,  Lawrence M. Meadows, declare as follows:

I am on the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of Florida that the foregoing is true and correct.

Date: March 14, 2014,

Lawrence M. Meadows

## NOTICE REQUEST FOR HEARING

### PLAINTIFFS SECONDS MOTION AND MEMORANDUM FOR RULE 11(b) SANCTIONS AGAINST DEFENDANT'S COUNSEL TERRENCE CONNER, JENNFIFER ELLIS and GRACE MORA, FOR SUBMITTING TO THE COURT SIGNED PLEADINGS CONTAINING MISREPRESENTATIONS SUPPORTED BY MATERIAL MISTATEMENTS OF FACT AND FRAUDULENT EVIDENCE

I, Lawrence M. Meadows, plaintiff, in the above styled cause, hereby files this Notice to Request hearing on the above referenced matter motion in accordance with Fla. S.D. Local Rule 7.1(b)(2), as this is a serious matter which requires the full consideration of the Court, and should offered the Plaintiff the ability to full argue it. Unless, the Court in its discretion deems it appropriate to award requested Sanctions and Relief without such hearing.

Signed: March 14, 2014, and                                  Respectfully submitted,
To be Filed: April 4th, 2014

Lawrence M. Meadows, Pro Se
Po Box 4344
Park City, UT 84060
Telephone: (516) 982-7718
Facsimile: (435) 604-7850
lawrencemeadows@yahoo.com

Verified Motion

12

## Certificate of Service

**I hereby certify,** that a true and correct copy of the foregoing was served by U.S. Mail and E-mail on March 14, 2014 on all counsel or parties of record on the Service List below.


Signature of Filer
Lawrence M. Meadows, Pro Se


## SERVICE LIST


**Terrence G. Conner,  Esq.**
**Jennifer D. Ellis,  Esq.**
**Grace M. Mora,  Esq.**
Hunton & Williams, LLP.
1111 Brickell Avenue
Suite 2500
Miami, FL 33131
Telephone: (305) 810.2500
Fax: (305) 810.2460
Email: tconner@hunton.com, jellis@hunton.com, gmora@hunton.com
Lead Counsel for Defendant
Attorneys for Defendant